74 N.J. Super. 528 (1962)
181 A.2d 785
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
WILLIAM P. MORTON, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued May 21, 1962.
Decided June 4, 1962.
*529 Before Judges CONFORD, GAULKIN and KILKENNY.
Mr. Aaron Dines argued the cause for appellant.
Mr. Bertram Polow, First Assistant Prosecutor, argued the cause for respondent (Mr. Frank C. Scerbo, Morris County Prosecutor, attorney).
The opinion of the court was delivered by CONFORD, S.J.A.D.
We think the interests of justice call for a retrial of this case before the municipal court.
The defendant was convicted of driving a motorcycle under the influence of intoxicating liquor, contrary to N.J.S.A. 39:4-50. He was punished as a second offender. The prosecuting interrogation of the State's witnesses was conducted by the sitting magistrate, no prosecuting attorney being available. The Morris County Court affirmed on the transcript made in the municipal court. However, the County Court rejected the evidence of the "drunkometer" test on the ground that the regularity of its use and the reliability of the indicated results were not adequately authenticated by testimony, within our recent decision in State v. Miller, 64 N.J. Super. 262, 270 (App. Div. 1960). The State does not contest the correctness of that ruling.
The State's case was founded upon the testimony of two police officers, one of whom had arrested the defendant for speeding, while the other examined him with the drunkometer and allegedly standard physical tests such as finger to nose, walking heel to toe, standing and bending with eyes closed and feet in various positions, etc. The arresting officer, Castellucci, testified that defendant was "under the *530 influence," but on cross-examination based his opinion on the following factors:
"A. The fact that the man was exceeding the speed limit on a motorcycle, the fact that he lost his license for driving while under the influence only a short time before, and the fact that he was driving a motor vehicle with an expired registration. Along with the fact that he smelled of alcoholic beverage, and in my opinion of his physical observation, he did not perform properly and did show a sign of being impaired. Then, to substantiate that, the fact that the drunkometer reading showing him to be .15 per cent."
Officer Hornung, who administered the various tests, testified that before administering the drunkometer test he had formed the opinion, from his observation of the defendant and from his performance of the other tests, that defendant was "under the influence of alcoholic beverages." He did not, however, have an opinion as to defendant's "fitness to drive" before administering the drunkometer test, but after that test showed a reading of.153% he entertained the opinion that the defendant was unfit to drive.
The two officers gave varying conclusions as to the degree of defendant's success in performance of the various physical tests. For example, Hornung found some of the test results "normal," Castellucci none. Hornung found defendant failed on only three out of six "finger to nose" tests; Castellucci observed the same tests to show total failure on all attempts. There was no testimony as to the general use or reliability of such tests or as to the respective officers' experience or special knowledge in relating a given degree of success or failure in performance thereof to a conclusion as to the defendant's being under the influence of intoxicating liquor. Defendant does not on this appeal attack the reliability of the tests themselves but does make the point that the State failed to establish "what standards" of performance thereof were applied by the officers in arriving at their affirmative conclusions as to defendant's being under the influence of intoxicating liquor. At our request, we have since the argument been supplied with a printed *531 form which is customarily used for the administration of these tests, but we remain without information as to the degree of success or failure therein which is authoritatively regarded as normal or below normal in relationship to freedom from the influence of intoxicating liquor.
It is to be conceded that there was evidence as to defendant's appearance, odor and behavior at or shortly after the arrest and as to his prior consumption of beer which might have supported an affirmative finding on the issue of his transgression of the statute. There were also, however, some indicia of normality of condition. We cannot know, insofar as Officer Castellucci is concerned, to what extent his ultimate conclusion of defendant's condition was based upon the irrelevant factors of speeding, prior conviction, and driving on the revoked list. Nor can we be assured that either officer was not influenced in his ultimate conclusion by the indicated result of the drunkometer test. There are Hornung's unexplained distinction between defendant's being "under the influence" and being unfit to drive, as of prior to the availability of the drunkometer test result, and Castellucci's citation of the result of that test in summing up the reasons for his opinion of defendant's condition.
We are, moreover, concerned as to the probative sufficiency of the testimony as to the results of the physical tests and the conclusions drawn therefrom by the witnesses. Had these been administered by a physician witness, his presumed special knowledge and training would ordinarily adequately support an opinion by him as to the subject's condition based in whole or in part upon his appraisal of the performance of such tests by the subject. But in the case of ordinary policemen there should be some foundation laid in their testimony or otherwise by which the trier of the case can rationally conclude either that they were qualified as experts to relate a given record of performance of the tests to the statutory standard of guilt (as particularized in State v. Emery, 27 N.J. 348, 355 (1958): "the presumed offender has imbibed to the extent that his physical *532 coordination or mental faculties are deleteriously affected") or that he, the trier, can make his own findings and conclusions as to the subject's condition in terms of the legal standard of guilt from the objective results of the tests as given in testimony. Cf. State v. Miller, supra.
There is, for the reasons indicated, sufficient doubt in our minds as to whether a conviction on a finding of guilt beyond a reasonable doubt was justified on the record here made to warrant retrial of the case in the municipal court. That retrial should be conducted on behalf of the State by a prosecuting attorney. See R.R. 8:5. Moreover, since the retrial will be de novo, the State will be free to re-present the entire case, including the results of the drunkometer test upon proper substantiation of all elements thereof.
Reversed and remanded for a new trial in the municipal court.