STATE OF NEW JERSEY, PLAINTIFF–APPELLANT, v. ERNEST
ODOM, DEFENDANT–RESPONDENT.

Argued April 24, 1989—Decided July 26, 1989.

*Vickie Harrell–Burke,* Assistant Prosecutor, argued the cause for appellant (*Ronald S. Fava,* Passaic County Prosecutor, attorney).

*Roderick Taylor Baltimore,* Assistant Deputy Public Defender, argued the cause for respondent (*Alfred A. Slocum,* Public Defender, attorney).

*Chana Barron,* Deputy Attorney General, argued the cause on behalf of *amicus curiae* Attorney General of New Jersey (*Peter N. Perretti, Jr.,* Attorney General, attorney).

*John P. McDonald* submitted a brief on behalf of *amicus curiae* Association of Criminal Defense Lawyers of New Jersey.

The opinion of the Court was delivered by

HANDLER, J.

In this criminal appeal, the defendant was convicted of the possession of controlled dangerous substances with the inten-

tion to distribute. In the course of the trial, a police officer was qualified as an expert and permitted to testify that in his opinion the facts and circumstances surrounding the possession of the controlled dangerous substance indicated that they were possessed by the defendant not for personal use but with an intent to distribute them. A divided panel of the Appellate Division reversed the conviction. The majority held that this type of testimony was improper because it related directly to the issue of the ultimate guilt of the defendant. The dissenting judge disagreed, concluding that the testimony appropriately assisted the jury in understanding the evidence presented. The State appealed the decision to this Court as of right under *Rule* 2:2-1(a)(2). We are thus called on to resolve the divergent views reflected in the opinions below.

## I.

At approximately 11:30 a.m. on January 31, 1986, Detective Timothy Jordan of the Paterson Police Department executed a search warrant at premises on North Main Street. Detective Jordan, along with Detectives Humphrey and Vaio, entered the attic apartment where they found defendant, Ernest Odom, and C.W., a juvenile. Defendant and C.W. were informed that the detectives were executing a search warrant. In the ensuing search, Detective Humphrey found a clear plastic bag containing eighteen vials of cocaine in crack form in the pillowcase on the bed. No other drugs or drug paraphernalia were found. The defendant was subsequently charged with possession of a controlled dangerous substance, cocaine, and possession of the same drug with intent to distribute.

At trial, the State offered Detective Sergeant Ronald Tierney as an expert in illegal narcotics. Defense counsel objected to the detective testifying, claiming the detective was unqualified because his experience was based on hearsay and his testimony would not assist the jury.

Detective Tierney had been a member of the Paterson Police force for sixteen and one-half years and had served with the narcotics squad for nine and one-half years. He had participated in over 8,000 investigations and had made approximately 4,000 narcotics arrests. The detective had also been involved in over 400 crack investigations and had spoken with crack dealers on over fifty occasions. He had arrested over 100 individuals distributing crack and had executed twenty search warrants where crack and crack paraphernalia were seized. In the past he had been qualified 1,000 times as an expert in trials involving narcotics distribution. The trial court found Detective Tierney qualified to testify as an expert.

The detective then testified about the packaging of crack, its street value, characteristics, and use. He was asked to assume the following facts, as adduced at trial, to be true: that a search warrant was executed, that eighteen vials of crack were found in a pillowcase in a bed in which defendant was found sleeping, that $24.00 was found in the apartment and that no other drug paraphernalia was found. He was asked based on his experiences and such facts if he had an opinion "whether Ernest Odom possessed 18 vials of crack for his own use or possessed them with the intent to distribute them." Defense counsel objected that the detective was incompetent to testify regarding state of mind. The court overruled the objection and the detective was again asked, "Do you have an opinion whether those 18 vials of crack were possessed for personal use or for the purpose of distributing them?" Detective Tierney stated that it was his opinion that the drugs were possessed with an intent to distribute them.

He then explained the basis for his opinion. He detailed the procedures for crack processing and packaging, the estimated value of a vial of crack, and the addictive impact of the drug. The detective also stated that the lack of paraphernalia relating to personal drug use was another factor considered in forming his opinion, noting that the distribution of crack required no paraphernalia.

Subsequently, defendant testified that he was a crack addict. He claimed he purchased all eighteen vials the night before for his personal use. According to defendant, he usually smoked the crack, using two pipes, which he kept in the closet but which were not found when the police searched the apartment. Thereafter, defendant was found guilty as charged.

As noted, the Appellate Division, in a reported decision, reversed defendant's conviction for possession of cocaine with intent to distribute and remanded the matter for a new trial. *State v. Odom*, 225 *N.J.Super.* 564 (1988). The majority found that the detective's opinion regarding defendant's purpose in possessing the drugs was not only unhelpful to the jury but that its probative value was outweighed by its potential for prejudice. *Id.* at 572. The majority concluded that while expert testimony regarding the "use of and traffic in controlled dangerous substances" was permissible, an expert was precluded from expressing an opinion whether the circumstances of a particular case established an intent to distribute because that constituted a determination of the truth of the charge. *Id.* at 573. The dissent, on the other hand, concluded that expert testimony in this area would be helpful to jurors and that a hypothetical question concerning intent was permissible. *Id.* at 575–76.

## II.

We have stated recently that the opinion of a duly-qualified expert may be presented to a jury if it will genuinely assist the jury in comprehending the evidence and determining issues of fact. The admissibility of expert testimony turns not on

> whether the subject matter is common or uncommon or whether many persons or few have knowledge of the matter, but [on] whether the witnesses offered as experts have peculiar knowledge or experience not common to the world which renders their opinions founded on such knowledge or experience any aid to the court or jury in determining the questions at issue.
>
> [*State v. Zola*, 112 *N.J.* 384, 414 (1988) (quoting *Rempfer v. Deerfield Packing Corp.*, 4 *N.J.* 135, 141–42 (1950)).]

Thus, the opinion of an expert can be admitted in evidence if it relates to a relevant subject that is beyond the understanding of the average person of ordinary experience, education, and knowledge. If the expert's testimony on such a subject would help the jury understand the evidence presented and determine the facts, it may be used as evidence. The witness offered as an expert must, of course, be suitably qualified and possessed of sufficient specialized knowledge to be able to express such an opinion and to explain the basis of that opinion. *State v. Kelly*, 97 *N.J.* 178, 208 (1984). Once it is determined that this testimony will genuinely aid the jury, it can be admitted. *Id.* at 208 n. 14. Our Rules of Evidence codify these principles. *Evid.R.* 56(2).

In ruling that the expert's opinion was inadmissible the majority below believed that whether defendant's possession of drugs was with the intent to distribute was not an appropriate subject of expert testimony. 225 *N.J.Super.* at 573. The court's ruling can be viewed as entailing two criticisms of the expert opinion in this case. One is that the testimony of the expert covered a subject that was not beyond the understanding of average persons and, therefore, was not needed to assist the jury in its comprehension of the evidence. The other is that the opinion of the expert encompassed the determination of the truth of the criminal charge, which is solely the responsibility of the jury, and, therefore, cannot be the subject of an expert's opinion testimony. These criticisms raise distinct but related issues.

The majority below apparently believed that the opinion of the expert on whether the drugs were possessed with intent to distribute embraced an inference that could readily be drawn by the jury applying its own common sense and ordinary experience. In thus concluding that the expert testimony on this subject was not needed to assist the jury and was therefore improper, the court below appears to have departed from other Appellate Division decisions, *i.e., State v. Perez*, 218 *N.J.Super.*

478 (1987), and *State v. Binns,* 222 *N.J.Super.* 583, certif. denied, 111 *N.J.* 624 (1988).

In *Perez,* the defendant was convicted of possession of cocaine with intent to distribute. At trial a police expert was asked the following hypothetical based on the facts of the case:

Assume that the date is March 7th, 1985. The time is approximately 1:07 a.m. A white van is on the New Jersey Turnpike travelling southbound. This van is stopped for speeding. When a trooper approaches the vehicle, the passenger opens the door. The driver is asked for his credentials. As the trooper is having some problems conversing with the driver, he sees the passenger take his hands from his lap, put them in his pockets and toss an item to the back of the van. The item is eventually retrieved and it is found to contain 124.6 grams of cocaine of which 56 per cent is pure, or of the total volume, 70 per cent [sic] is pure freebase.

Sir, based on those facts, would you have an opinion as to whether or not the item was possessed for personal use or for possession with intent to distribute? [218 *N.J.Super.* at 482.]

The expert replied:

Based on my training, education and experience, it is my opinion that this cocaine is [sic] in this particular case was possessed with the intent to distribute, and I base that opinion on the quantity of the cocaine, being 4.2 [sic] ounces, and the quality of the cocaine being 56 per cent pure, which is above average high quality cocaine. [*Id.* at 483.]

The defendant did not object to this testimony at trial but on appeal claimed it was tantamount to a declaration of his guilt. However, with respect to whether it dealt with a subject beyond the understanding of an average person, the court said:

The record clearly reveals that [the expert] merely testified as to the quantity and quality of the cocaine and that in his opinion the amount and type of cocaine was intended for distribution.... Thus, our careful consideration of this issue leads us to conclude that it is unreasonable to assume that the average lay person called to serve as a juror would necessarily know what a person who possessed 4.4 ounces of 56% pure cocaine was going to do with it. Accordingly, we conclude [the expert's] testimony was properly admitted to aid the jury in determining the questions in issue. [218 *N.J.Super.* at 485.]

*State v. Binns, supra,* 222 *N.J.Super.* 583, also ruled that it was acceptable in a prosecution for possession of cocaine with intent to distribute for an expert to testify that

[t]wo people found in possession of approximately two and-a-half ounces of cocaine at the purity level of 36—approximately 36 percent, based on an economic factor it would be my opinion based on my knowledge and training

that they possessed that cocaine with the intent to redistribute it for profit. [*Id.* at 592.]

Subsequent to the Appellate Division's decision in this, the *Odom* case, another panel of the Appellate Division decided *State v. Toro*, 229 *N.J.Super.* 215 (1988). The defendant in *Toro* was convicted of possession of cocaine with intent to distribute. The cocaine weighed more than one pound and was sixty-five percent pure, free-base cocaine. At trial, the State's expert testified in the following fashion:

[The prosecutor]: An individual in possession of that amount of cocaine [501 grams of 65% pure free-base] based on your expertise, ... could you give an opinion as to what his purpose might be in possessing such a quantity? [The witness]: It's my opinion that anyone being in possession of this much at that percentage would be in the business of distribution of cocaine. [*Id.* at 225.]

The court upheld the admissibility of the evidence, regarding it "in the words of *Odom* [*i.e.*, the opinion of the majority below], as no more than an expert opinion as to 'the significance of various quantities and concentrations of narcotics.'" *Id.* (quoting *Odom*, 225 *N.J.Super.* at 573).

Other cases have generally recognized that the nature and purpose of the possession of illegal drugs is a subject within the specialized knowledge of experts and not something generally known by persons of ordinary understanding. Thus, in *State v. Carreon*, 151 *Ariz.* 615, 729 *P.*2d 969 (Ct.App.1986), the defendant was convicted of possession of cocaine for sale. When the expert witness was asked at trial if he had an opinion on whether the drugs had been held for sale, he stated, "Yes, I have an opinion. And my opinion is based on my experience that these drugs were possessed to sell. They were possessed for sale." *Id.* at 970. The court held the police officer

was clearly qualified to testify as an expert witness concerning the identification of narcotics, the way in which narcotics are packaged when they are for sale as opposed to when they are for personal use, and the general activities and methods of street-level narcotics dealers. Unlike the question of whether a person is intoxicated, the average juror is not familiar with such matters. [*Id.* at 617, 729 *P.*2d at 971.]

*See also People v. Douglas*, 193 *Cal.App.*3d 1691, 239 *Cal. Rptr.* 252 (Ct.App.1987) (expert testimony that marijuana was

being held for sale, rather than personal use, was admissible); *Hinnant v. United States*, 520 *A*.2d 292, 293 (D.C.1987) ("[b]ecause the use, sale, and packaging of heroin on the streets are not matters within the ken of the average lay person, expert testimony on the *modus operandi* of drugs traffickers may be admitted if relevant."); *Commonwealth v. Johnson*, 358 *Pa.Super.* 435, 517 *A*.2d 1311 (Super.Ct.1986) (two police officers who were properly qualified as expert witnesses were properly permitted to give opinion evidence that defendant possessed drugs with intent to distribute); *Commonwealth v. Sojourner*, 268 *Pa.Super.* 472, 408 *A*.2d 1100 (1978), aff'd on rehearing, modified on other grounds, 268 *Pa.Super.* 488, 408 *A*.2d 1108 (1979) (experienced detective testified that the defendant more than likely held fifty bags of heroin for sale); *Commonwealth v. Sendele*, 18 *Mass.App.Ct.* 755, 470 *N.E*.2d 811 (1984), rev. denied, 393 *Mass.* 1106, 474 *N.E*.2d 182 (1985) (permissible for detective and DEA agent to testify as experts that cocaine in vial was for personal use while cocaine in valise was intended for distribution). *But see State v. Vilalastra*, 207 *Conn.* 35, 540 *A*.2d 42 (1988) (prohibited expert opinion that the defendant possessed drugs for sale); *State v. Montana*, 421 *So*.2d 895, 890 n. 8 (La.1982) (same, following *State v. Wheeler*, 416 *So*.2d 78 (La.1982)); *State v. Oppedal*, 232 *N.W*.2d 517 (Iowa 1975) (same). These cases can be contrasted instructively with a California case, *People v. Hunt*, 4 *Cal*.3d 231, 238, 481 *P*.2d 205, 93 *Cal.Rptr.* 197, 202 (1971), in which it was held that the subject of the possession and use of legal drugs was beyond the specialized knowledge of the expert, which was limited to the use of illegal drugs.

The defendant stresses that the expert's testimony in this case relating to certain underlying facts, such as the quality and quantity of the drugs, their packaging, their estimated value, and addictive characteristics, would have been sufficient to enable the jury to draw its own conclusions concerning the significance of defendant's possession. The majority below apparently agreed with this position. It, in effect, bifurcates

the expert's opinion, allowing the expert to express his opinion on the significance of certain underlying facts, but disallowing the expert's opinion on the significance of the possession of such drugs. The court thus stated:

> In rendering assistance to the jury in a case such as this the expert witness may enlighten it, among other things, about the manner of packaging and processing for use or distribution, the significance of various quantities and concentrations of narcotics, the roles of various drug paraphernalia, characteristics of the drugs themselves, the import of circumstances surrounding possession, the conduct of the possessor and the manner in which drugs may be secreted or otherwise possessed for personal use or distribution. Whether the circumstances of a particular case establish an intent to use or to distribute must thereafter be left as a matter of argument by counsel. [225 *N.J.Super.* at 573.]

It is not clear why the former subject would reasonably require the specialized knowledge of an expert to assist the jury and the latter would not.

The case that defendant argues supports or illustrates the majority's view is *Biro v. Prudential Ins. Co.,* 110 *N.J.Super.* 391 (App.Div.1970), which was later reversed on the dissenting opinion of Judge Matthews. 57 *N.J.* 204 (1970). The Appellate Division there ruled that a medical examiner should not have been prevented from testifying in an action for accidental death benefits that the decedent had committed suicide. The dissent wrote that

> [a] medical examiner is probably uniquely situated to draw such conclusions as "X died of carbon monoxide poisoning," "X died of a blow to the rear of the head," "X died in a particular position and was moved," or "X was killed by a bullet which entered his brain and was fired at an angle of 30 degrees from the horizontal from no shorter than 300 yards." However, a medical examiner has no special competence to testify as to the perpetrator of the bullet in the last given example. Whether X rigged a high-powered rifle to kill himself as he stood in a certain place, or whether X was assassinated, depends on the jury's evaluation of a medical examiner's conclusion as to physiological causation *and also on other evidence produced on the matter.*
>
> The majority ignores the difference between a conclusion of the medical examiner that "X died of carbon monoxide poisoning and alcohol" and "X died of carbon monoxide poisoning and alcohol by his own hand and he intended to kill himself." I believe that permitting the medical examiner to testify to the conclusion of suicide, as the majority would, tends to mislead the jury into thinking that he knows something that they do not. [*Id.* at 404.]

What was objectionable about the expert's opinion in *Biro* was that it expressed a view on an aspect of the subject that was beyond his area of expertise and was within the understanding of the average person. The expert in such a setting, therefore, was no better qualified than a layperson to determine the facts. *See, e.g., Chavanne by Chavanne v. Clover Fin. Corp.,* 206 *N.J.Super.* 72, 78 (App.Div.1985) (expert medical testimony regarding severity of plaintiff's scar precluded because scar was plainly observable by jury and consequently expert testimony was not needed to assist jury in determining that issue).

Here, defendant does not appear to contest the fact that the jury will normally need the insight of an expert to explain the significance of the properties, packaging, and value of illegal drugs. It simply does not follow, however, that once the expert has revealed his knowledge and given such an explanation of underlying facts, average persons with ordinary backgrounds would then be able to appreciate whether possession of those drugs would be for personal use or for distribution. As stated in *State v. Perez, supra,* "it is unreasonable to assume that the average lay person called to serve as a juror would necessarily know what a person who possessed [a certain quantity of drugs in certain circumstances] was going to do with it." 218 *N.J.Super.* at 485. The jury, though enlightened by the expert's explanation of the significance of surrounding facts, does not thereby become expert in the field. Thus, under these circumstances, the subject of intent or purpose in connection with the possession of unlawful drugs is a matter of specialized knowledge of experts. In this case, we are satisfied that the testimony of the expert covered a subject beyond the understanding of average persons and was genuinely helpful to the jury in understanding the evidence presented and determining important issues of fact.

The further criticism of the expert's testimony that was expressed by the majority below is that the opinion presented a

view of the criminal guilt of the defendant, and, for that reason, should have been withheld from the jury.

We have repeatedly and consistently recognized that a jury's determination of criminal guilt or innocence is its exclusive responsibility. *State v. Simon*, 79 *N.J.* 191 (1979). A jury's verdict of ultimate criminal liability can never be equated simply with its determination of underlying facts; the determination of guilt or innocence transcends the facts on which it is based, no matter how compelling or inexorable those facts may be. *State v. Ragland*, 105 *N.J.* 189 (1986). The determination of facts that serve to establish guilt or innocence is a function reserved exclusively to the jury. *State v. Collier*, 90 *N.J.* 117 (1982). Hence, an expert's testimony that expresses a direct opinion that defendant is guilty of the crime charged is wholly improper. *See, e.g., State v. Landeros*, 20 *N.J.* 69, 74 (1955) (improper for expert, when asked if the defendant was guilty, to reply, "He is as guilty as Mrs. Murphy's pet pig."); *see also Shutka v. Pennsylvania R.R. Co.*, 74 *N.J.Super.* 381, 401–02 (App.Div.1962) (court allowed expert opinion regarding the ultimate issue, noting, however, that expert testimony that expressed "his belief as to how the case should be decided" would be improper).

In this case, Detective Tierney did not express an opinion that defendant was guilty of the crime charged. Defendant contends, however, that the opinion went too far because it expressed the view that defendant possessed the drugs with the intent to distribute. The majority agreed that this opinion was improper because it embraced an ultimate issue bearing so directly on guilt that it must be reserved exclusively for the jury.

*Perez* suggests that an opinion does not go too far as long as it does not express the view that defendant is guilty of the crime charged. The court in *Perez* said that "nowhere do we find the record to indicate that [the expert] stated defendant was guilty of the charges against him." 218 *N.J.Super.* at 485.

It pointed out that *Evidence Rule* 56(2) and (3) allows an expert to testify about areas of specialized knowledge if that testimony "will assist the trier of fact to understand the evidence or determine a fact in issue," even if that opinion embraces an ultimate issue to be determined by the jury. 218 *N.J.Super.* at 483 (quoting *State v. Kelly, supra,* 97 *N.J.* at 208. *State v. Binns, supra,* 222 *N.J.Super.* 583, is consistent with this ruling.

This analysis is also exemplified by *State v. Zola, supra,* 112 *N.J.* 384, a capital case in which the defendant was convicted of aggravated sexual assault. At trial an expert testified that saliva found in the victim's vagina might have been placed there by the defendant; if the jury believed this, it could have concluded that this constituted a necessary element of the crime charged. This Court held that while "it is hardly debatable that the subject of the saliva's source posed no matter of scientific complexity," the expert could offer an opinion "rationally based on the relationship of the scientific to the circumstantial evidence in the case, on a scientifically possible source of that material." *Id.* at 415. The Court went on to say:

> In admitting into evidence that common-sense interpretation of the relationship between scientific fact and the inference it sustained, the trial court's ruling did not infringe on the jury's capacity to determine an ultimate fact: the source of the saliva in the sample.
>
> [*Id.* at 415–16.]

*See also State v. Morton,* 74 *N.J.Super.* 528, 531–32 (App.Div. 1962), aff'd, 39 *N.J.* 512 (1963) (in drunk driving prosecutions, police officer qualified as an expert may offer opinion that defendant was drunk based on his observations of defendant's performance on certain balance tests, even though average jurors have some familiarity with an individual's behavior while under the influence).

 We are satisfied in this case that the detective's opinion was based exclusively on the surrounding facts relating to the quantity and packaging of the drugs and their addictive quality, as well as the absence of drug-use paraphernalia; his

explanation of these facts was clearly founded on his experience and specialized knowledge as an expert. The conclusion he drew—that possession of these drugs was for the purpose of distribution—was similarly derived from his expertise. We therefore conclude that as long as the expert does not express his opinion of defendant's guilt but simply characterizes defendant's conduct based on the facts in evidence in light of his specialized knowledge, the opinion is not objectionable even though it embraces ultimate issues that the jury must decide.

Moreover, such an opinion is permissible although it is expressed in terms that parallel the language of the statutory offense when that language also constitutes the ordinary parlance or expression of persons in everyday life. *See, e.g., State v. Morton, supra,* 74 *N.J.Super.* at 531–32 (police officer in drunk-driving case allowed to testify that defendant was under the influence of alcohol); *State v. Rucker,* 46 *N.J.Super* 162, 166 (App.Div.) (police experts in gambling prosecution allowed to testify as experts that certain papers were for use in a lottery), certif. denied, 25 *N.J.* 102 (1987); *State v. Smith,* 21 *N.J.* 326, 334 (1956) (same); *State v. Arthur,* 70 *N.J.L.* 425 (Sup.Ct.1904) (same).

In addition, it appears that the dominant authority throughout the country has ruled that an expert witness may testify that a defendant possessed a controlled dangerous substance with the intent to distribute it, even if the opinion is expressed in the language of the statutory offense. *See, e.g., State v. Carreon, supra,* 151 *Ariz.* 615, 729 *P.2d* 969, 971; *accord State v. Keener,* 110 *Ariz.* 462, 520 *P.2d* 510, 514 (1974) (en banc); *People v. Douglas, supra,* 193 *Cal.App.*3d at 1693, 239 *Cal. Rptr.* at 254; *People v. Martin,* 247 *Cal.App.*2d 416, 55 *Cal. Rptr.* 629, 633 (Ct.App.1966); *State v. Olsen,* 315 *N.W.*2d 1 (Iowa 1982); *Commonwealth v. Sendele, supra,* 18 *Mass. App.Ct.* 755, 470 *N.E.*2d 811. Thus, for example, in *United States v. Kelly,* 679 *F.*2d 135 (8th Cir.1982), a detective was permitted to testify as an expert that the quality of cocaine possessed by the defendant would ordinarily be possessed with

intent to distribute, even though the words of his opinion were similar to those used in the statute—"[t]he words 'possess with intent to distribute,' are commonly used and their plain meaning matches their legal meaning." *Id.* at 136.

It may be that an expert's opinion is expressed in such a way as to emphasize that the expert believes the defendant is guilty of the crime charged under the statute. This would be impermissible. Thus, in *United States v. Scop*, 846 *F*.2d 135, *rev'd in part on rehearing*, 856 *F*.2d 5 (2d Cir.1988), the court observed:

> None of our prior cases, however, has allowed testimony similar to [the expert's] repeated use of statutory and regulatory language indicating guilt. For example, telling the jury that a defendant acted as a "steerer" or participated in a narcotics transaction differs from opining that the defendant "possessed narcotics, to wit, heroin, with intent to sell," or "aided and abetted the possession of heroin with intent to sell," the functional equivalent of [the expert's] testimony in a drug case. [*Id.* at 142.][1]

Here, an expert in the use and distribution of unlawful drugs can assist the jury by offering his opinion based on special knowledge and experience about the characteristics that serve

---

[1]The cases referred to were *United States v. Brown*, 776 *F*.2d 397 (2d Cir.1985), *cert.* den., 475 *U.S.* 1141, 106 *S.Ct.* 1793, 90 *L.Ed.*2d 339 (1986), *United States v. Young*, 745 *F*.2d 733 (2d Cir.1984), *cert.* den., 470 *U.S.* 1084, 105 *S.Ct.* 1842, 85 *L.Ed.*2d 142 (1985), and *United States v. Carson*, 702 *F*.2d 351 (2d Cir.), *cert.* den., 462 *U.S.* 1108, 103 *S.Ct.* 2456, 77 *L.Ed.*2d 1335 (1983). In *United States v. Brown, supra*, 776 *F*.2d 397, the defendant was convicted of conspiring to distribute heroin and possession of heroin with intent to distribute. At trial, a police detective, testifying as an expert, explained procedures used by drug dealers in making sales; he further testified that based on his experience he was of the opinion that the defendant was acting as a "steerer" in a drug transaction. Despite the fact that this testimony asserted that the defendant was involved in selling drugs, the court ruled that it was properly admitted. In *United States v. Young, supra*, 745 *F*.2d at 760–61, a police detective was allowed to testify, based on his observations, that he believed a narcotics transaction had taken place; and a DEA agent was allowed to testify as an expert witness that what he found in defendant's apartment was precisely what he would have expected to find in a heroin "mill." In *United States v. Carson, supra*, 702 *F*.2d 351, defendants were charged with conspiracy to distribute heroin and conspiracy to possess heroin with intent to distribute; two policemen were permitted to testify at trial that the actions engaged in by the defendants appeared to be a drug sale.

to identify drugs that are being held for sale or distribution. Further, an expert opinion that the drugs were held for distribution, even though expressed in words that are similar to the statutory definition of the offense, does not rise to the level of an assertion that the defendant committed the crime charged or is guilty of the statutory offense.

In sum, we are satisfied that the expert's opinion in this case was properly admitted. It covered a subject that was within the specialized knowledge of the expert, and thus beyond the understanding of persons of average knowledge, education, and experience; therefore, it was reasonably required to assist the jury in understanding the evidence and determining the facts. Further, although expressed in terms of ultimate issues of fact, namely, whether drugs were possessed with the intent to distribute, the expert's opinion did not impermissibly constitute the expression of a view that defendant was guilty of the crime charged.

### III.

This does not mean that the question posed and answered by the expert in this case was proper. As demonstrated, the opinion was not objectionable on the grounds that it expressed a view on a subject that did not require expertise or a view that defendant was guilty of the crime charged. Nevertheless, there are aspects of the proposed testimony that are problematic. It is therefore important that trial courts and trial attorneys clearly understand the standards governing such expert testimony and that juries be carefully instructed on how to consider and use such testimony in their deliberations.

The majority below in part described such standards. It pointed out that in proffering the opinion of an expert in this kind of case, the hypothetical question should be carefully phrased to refer only to the testimony and evidence adduced about the manner of packaging and processing for use or distribution, the significance of various quantities and concentrations of narcotics, the roles of various drug paraphernalia, characteristics of the drugs themselves, the import

of circumstances surrounding possession, the conduct of the possessor and the manner in which drugs may be secreted or otherwise possessed for personal use or distrubution.

[225 *N.J.Super.* at 573.]

Once this foundation has been laid, the expert should then be presented with a hypothetical question through which he or she can advise the jury of the significance of these facts on the issue of possession. Having set forth this information in the form of a hypothetical, the expert may be asked if, based on these assumed facts, he or she has an opinion whether the drugs were possessed for personal use or for the purpose of distribution.

It is also essential that the jury be advised, following the presentation of the expert's opinion, of the basis for that opinion. The hypothetical question should clearly indicate that it is the witness' opinion that is being sought and that that opinion was formed assuming the facts and circumstances adduced only at trial. It is important that the witness, and the jury, understand that the opinion cannot be based on facts that are not in evidence.

■ In addition, to the extent possible, the expert's answer should avoid the precise terminology of the statute defining the criminal offense and its necessary elements. While ordinary expression and plain language should not be distorted, statutory language should be paraphrased. Further, the defendant's name should not be used. *Cf. State v. Doyle*, 77 *N.J.Super.* 328, 339 (App.Div.1962), aff'd, 42 *N.J.* 334 (1964) (although use of the name should be avoided, such use in a hypothetical question was harmless error).

Finally, the trial court should carefully instruct the jury on the weight to be accorded to and the assessment of expert opinion testimony. It should be emphasized that the determination of ultimate guilt or innocence is to be made only by the jury.

In this case, the opinion of the expert was expressed in the ordinary language of average persons in everyday life. There was no undue repetition of the language of the statutory offense or references to the statutory offense. One aspect of the question, however, incorporated defendant's name in the hypothetical. Under the circumstances, however, the error is harmless. *State v. Doyle, supra,* 77 *N.J.Super.* at 339. The jury was aware of defendant's admitted possession of the drugs. *See State v. Toro, supra,* 229 *N.J.Super.* at 225.

The judgment below is reversed.

*For reversal*—Justices CLIFFORD, HANDLER, POLLOCK, O'HERN, GARIBALDI and STEIN—6.

*For affirmance*—None.