638 A.2d 915

STATE OF NEW JERSEY, PLAINTIFF-APPELLANT, v.
DWAYNE CANNON, DEFENDANT-RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued February 22, 1994—Decided March 18, 1994.

Before Judges PETRELLA, BAIME [1] and VILLANUEVA.

*Jeffrey Garrigan,* Assistant Prosecutor, argued the cause for appellant (*Carmen Messano,* Hudson County Prosecutor, attorney; *Mr. Garrigan,* Assistant Prosecutor, of counsel and on the letter-brief).

*Matthew Astore,* Deputy Public Defender II, argued the cause for respondent (*Susan L. Reisner,* Acting Public Defender, attorney; *Mr. Astore,* of counsel and on the letter-brief).

The opinion of the court was delivered by

VILLANUEVA, J.A.D.

We granted the State's motion for leave to appeal from a pretrial ruling in a drug distribution case barring the testimony of the State's expert witness regarding methods employed by street-level drug dealers. We reverse.

This case arises out of an incident which occurred on February 5, 1993, at Wilkerson Avenue and Martin Luther King Drive in Jersey City. Members of the Jersey City Police Department Narcotics Task Force set up a visual surveillance at that intersection. Sergeant Phil Zacche observed the defendant, Dwayne Cannon, standing on the northwest corner. He observed another individual, Ronald Quarters, approach the corner on a bicycle and engage in a brief conversation with the defendant. Both individuals then went west on Wilkerson Avenue a short distance, at which time McQuarters handed defendant currency. In exchange for the currency, defendant handed over several vials of suspected cocaine to McQuarters.

---

[1] Judge Baime did not participate in oral argument, but, with the consent of counsel, has been added to the panel deciding the matter.

McQuarters left the area proceeding south on Martin Luther King Drive. Zacche radioed the description of the suspect and his direction to perimeter units who stopped McQuarters and searched him. The search revealed four vials of cocaine.

Prior to receiving radio confirmation from perimeter units regarding the sale, Zacche observed defendant hand the currency received from McQuarters to a male wearing a shiny green jacket with a black hood and jeans. This male immediately left the area proceeding south on Martin Luther King Drive. Zacche radioed the description and direction of this individual to perimeter units but this individual was never located. Defendant was later arrested and searched. The search revealed no further narcotics nor currency.

Defendant was indicted for possession of a controlled dangerous substance, cocaine, *N.J.S.A.* 2C:35–10a(1); possession of a controlled dangerous substance, cocaine, with the intent to distribute the same, *N.J.S.A.* 2C:35–5a(1) and 2C:35–5b(3); possession of a controlled dangerous substance, cocaine, with the intent to distribute the same, while within 1,000 feet of school property, *N.J.S.A.* 2C:35–5a(1) and *N.J.S.A.* 2C:35–7; distributing a controlled dangerous substance, cocaine, to Ronald McQuarters, *N.J.S.A.* 2C:35–5a(1) and 2C:35–5b(3); and distributing a controlled dangerous substance, cocaine, to Ronald McQuarters, while within 1,000 feet of school property, *N.J.S.A.* 2C:35–5a(1) and *N.J.S.A.* 2C:35–7. The last count of the indictment charged McQuarters with possessing a controlled dangerous substance, cocaine, *N.J.S.A.* 2C:35–10a(1).

On August 3, 1993, during jury selection, a pretrial *N.J.R.E.* 104(a) hearing was conducted concerning the proffered testimony of an expert witness for the State, Detective Richard Vogel. The trial judge barred this testimony in the State's "affirmative case." The judge found that (1) what occurred was "within the common fund of knowledge of the jury;" (2) there would be prejudice to the defendant which "far outweighs that probative value" by making the expert an advocate for the prosecution; and (3)

because if, as the prosecution predicted, the defense presented proof of some other explanation for the transfer of the money, then expert testimony would be appropriate on rebuttal by the State to rebut the defense's explanation for the transfer of the funds. We granted the State's motion for leave to appeal.

*N.J.R.E.* 702, which became effective July 1, 1993, states:

> If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise.

This rule imposes the same standard as former *Evid.R.* 56(2), which it replaced. It incorporates the general criteria for admissibility of expert testimony articulated by *State v. Kelly*, 97 *N.J.* 178, 208, 478 *A.*2d 364 (1984), which requires that "the intended testimony must concern a subject matter that is beyond the ken of the average juror."

This requirement by the Supreme Court has been reaffirmed in subsequent decisions, namely, *Landrigan v. Celotex Corporation*, 127 *N.J.* 404, 413, 605 *A.*2d 1079 (1992); *State v. Zola*, 112 *N.J.* 384, 414, 548 *A.*2d 1022 (1988), *cert. denied*, 489 *U.S.* 1022, 109 *S.Ct.* 1146, 103 *L.Ed.*2d 205 (1989); and *State v. Odom*, 116 *N.J.* 65, 81, 560 *A.*2d 1198 (1989).

In *State v. Odom*, the Court held that expert testimony is admissible under this requirement not only to explain the significance of the appearance, quantities, purity, packaging and value of the illegal drugs involved in the case, but also to explain whether possession of those drugs under specific circumstances was probably for personal use or for distribution. *Odom, supra*, 116 *N.J.* at 76, 560 *A.*2d 1198. The court stated that:

> The jury, though enlightened by the expert's explanation of the significance of surrounding facts, does not thereby become expert in the field. Thus, under these circumstances, the subject of intent or purpose in connection with the possession of unlawful drugs is a matter of specialized knowledge of experts. In this case, we are satisfied that the testimony of the expert covered a subject beyond the

understanding of average persons and was genuinely helpful to the jury in understanding the evidence presented and determining important issues of fact.

[*Ibid.*]

At the trial of this defendant, the State intends to offer as an expert witness, Detective Richard Vogel of the Jersey City Police Department to testify regarding the methods employed by street-level drug dealers in Jersey City. The testimony would include the significance of both money and drugs in street-level transactions and the various ways in which sellers secrete both items to avoid detection.

■ Expert testimony in cases charging possession with intent to distribute illegal drugs and distribution thereof can cover not only the significance of the illegal drugs and the intent of an individual based upon hypothetical facts, but also the role of various actors and items used in the distribution trade. An item such as currency is an integral part of the illegal narcotic transaction and the fact that it is secreted on another person is significant in the drug trade. The State has no way of knowing what the defense will or will not produce or what argument will be made regarding the transfer of money. Therefore, it is proper for a duly qualified expert to assist the jury to comprehend the use of such evidence in the context of this transaction.

Cases in other jurisdictions have recognized the admissibility of expert opinion testimony about the activities surrounding an alleged drug transaction. In *State v. Carreon,* 151 *Ariz.* 615, 616, 729 *P.*2d 969, 970 (Ct.App.1986), the expert witness, a local undercover narcotics officer, testified to the significance of the way in which the confiscated money was packaged. The Arizona Court held that the police officer:

was clearly qualified to testify as an expert witness concerning the identification of narcotics, the way in which narcotics are packaged when they are for sale as opposed to when they are for personal use, and the general activities and methods of street-level narcotics dealers. Unlike the question of whether a person is intoxicated, the average juror is not familiar with such matters. The testimony presented by such an expert witness will definitely "assist the trier of fact to understand the evidence or to determine a fact in issue."

[*Id.* at 617, 729 *P.*2d at 971 (quoting comment on *Fed.R.Evid.,* 704).]

In *Hinnant v. United States*, 520 A.2d 292 (D.C.1987) the Court held that it was proper to permit the testimony of a narcotics detective, "because the use, sale, and packaging of heroin on the streets are not matters within the ken of the average lay person, expert testimony on the *modus operandi* of drug traffickers may be admitted if relevant." *Id.* at 293.

■ Specifically, the State asserts that Detective Vogel would have testified that it is common practice in Jersey City that drug dealers use third parties to hold either the narcotics themselves or proceeds from sales and street-level dealers frequently keep the narcotics and currency in separate locations to avoid police detection and/or avoid being robbed by other people. Detective Vogel would further opine that drug dealers are well aware of the implications and effects of possession of both the money and the drugs. Consequently, they have developed certain practices in Jersey City to limit their exposure. If a person is arrested with both narcotics and money, a strong case can be made that he had the narcotics with intent to distribute. On the other hand, simply possessing money is not illegal and mere possession of narcotics depending on the quantity may indicate personal use, a less serious offense.

The average juror does not understand how drug operations are conducted on the streets. The act of passing money by defendant to a third person would be meaningless to a jury unless they were aware of its significance in the drug trade. Expert testimony is helpful for the jury to understand the "modus operandi" of drug traffickers. Barring testimony concerning these practices would prevent the jury from understanding the issues in this case.

Defendant's argument that the critical issue is the arresting officer's credibility, and therefore expert testimony is not needed, overlooks the fact that the jury as part of their weighing process in determining the officer's credibility is entitled to know how drug transactions are conducted.

Reversed.