# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1331-18T2

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

JOSEPH A. RANDONE,

     Defendant-Appellant.

_____

        Submitted November 4, 2019 – Decided February 4, 2020

        Before Judges Fasciale and Moynihan.

        On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Indictment No. 10-04-0646.

        Joseph E. Krakora, Public Defender, attorney for appellant (David A. Gies, Designated Counsel, on the briefs).

        Mark Musella, Bergen County Prosecutor, attorney for respondent (Nicole Paton, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Joseph A. Randone was convicted of first-degree aggravated sexual assault, N.J.S.A. 2C:14-2(a) (count one); third-degree endangering the welfare of a child, N.J.S.A. 2C:24-4(a) (counts two, four and seven);[1] second-degree sexual assault, N.J.S.A. 2C:14-2(a) (count three);[2] and first-degree kidnapping, N.J.S.A. 2C:13-1(b) (count six); all counts involved the victim, D.C., who was twelve and thirteen years old at the time of the crimes.[3] Defendant appeals the denial of his petition for post-conviction relief (PCR), arguing:

> POINT I
>
> THE PCR COURT ERRED WHERE IT DID NOT ANALYZE THE CREDIBILITY OF THE ABSENT WITNESS[, A DIVISION OF YOUTH AND FAMILY SERVICES (DYFS)[4] CASEWORKER,] OR HOW

---

[1]  Defendant was also indicted for third-degree endangering the welfare of a child, N.J.S.A. 2C:24-4(a) (counts eight, nine and ten), in connection with other victims.  He was found guilty on counts eight and nine.  The trial judge dismissed count ten.  He does not raise any issue with regard to those counts in his merits brief.

[2]  Count three of the indictment originally charged first-degree sexual assault. It was later amended to second-degree sexual assault.

[3]  Defendant was found not guilty of second-degree burglary, N.J.S.A. 2C:18-2 (a)(1) (count five).

[4]  Effective June 29, 2012, the Department of Children and Families was reorganized and the Division of Youth and Family Services was rebranded as

HER TESTIMONY REGARDING THE DYFS INVESTIGATION WOULD HAVE IMPACTED THE STATE'S CASE.

POINT II

THE PCR COURT ERRED WHERE IT DETERMINED THAT DEFENDANT'S CLAIM OF INEFFECTIVENESS REGARDING THE FAILURE TO FURNISH TO THE STATE D.C.'S DIARY ENTRIES AS RECIPROCAL DISCOVERY WAS BARRED BECAUSE THE ISSUE WAS ADJUDICATED ON HIS DIRECT APPEAL.

POINT III

THE PCR COURT ERRED WHERE IT DETERMINED THAT AN EVIDENTIARY HEARING WAS NOT NECESSARY TO RESOLVE DEFENDANT'S INEFFECTIVENESS CLAIM REGARDING HIS DECISION TO WAIVE HIS RIGHT TO TESTIFY.

We are unpersuaded by these arguments and affirm.

The PCR court granted an evidentiary hearing on defendant's trial counsel's failure to call the DYFS caseworker to testify at trial but denied a hearing on defendant's other two claims. As to the findings made by the judge after the evidentiary hearing, "[o]ur standard of review is necessarily

_____

the Division of Child Protection and Permanency. L. 2012, c. 16. We use the appellation in effect at the time of defendant's trial and sentencing, the latter of which occurred on June 15, 2012.

3

deferential" so long as the findings are supported by "sufficient credible evidence in the record." State v. Nash, 212 N.J. 518, 540 (2013). "Those findings warrant particular deference when they are 'substantially influenced by [the PCR court's] opportunity to hear and see the witnesses and to have the "feel" of the case, which a reviewing court cannot enjoy.'" State v. Rockford, 213 N.J. 424, 440 (2013) (quoting State v. Robinson, 200 N.J. 1, 15 (2009)). Absent an evidentiary hearing, however, our review of the factual inferences drawn by the PCR court from the record is de novo, as is our review of the judge's legal conclusions. State v. Blake, 444 N.J. Super. 285, 294 (App. Div. 2016).

Turning first to the matters decided without an evidentiary hearing, the PCR court concluded defendant's claim that his trial counsel was ineffective for failing to provide the State with D.C.'s diary entries during pretrial discovery, thereby resulting in the trial judge's preclusion of that evidence, with which trial counsel attempted to impeach D.C., was barred because the issue was decided on direct appeal. See R. 3:22-5. "Under Rule 3:22-5, prior adjudication of an issue, including a decision on direct appeal, will ordinarily bar a subsequent post-conviction hearing on the same basis." State v. Afanador, 151 N.J. 41, 51 (1997). An issue is only barred under the Rule, however, if the issue sought to be precluded "'is identical or substantially equivalent' to the issue already

adjudicated on the merits." Ibid. (quoting State v. McQuaid, 147 N.J. 464, 484 (1997)).

We previously considered defendant's claims on direct appeal that his trial counsel did not violate pretrial discovery Rules, and even if he did, preclusion of the evidence was too extreme a remedy. State v. Randone, No. A-6300-11 (App. Div. June 17, 2014) (slip op. at 6-7). There we set forth the facts of this case, and we will not repeat them here except as required to address the present issues. Although we determined the trial judge failed to "read the documents[5] to determine how material the statements reflected therein were to defendant's right to confront" D.C., and should have considered a lesser sanction than preclusion, applying the harmful error standard,[6] we "declin[ed] to reverse . . .

---

[5] On direct appeal, we identified the documents with which trial counsel attempted to impeach D.C. as letters. Defendant's trial counsel, in arguing a motion for new trial just prior to sentencing, referenced entries in D.C.'s diary—or journal—as the documents he sought to use during his cross-examination of D.C. as well as the diary—or journal, as we named it in our prior decision. Defendant does not raise any issue with regard to the letters in his merits brief, only the diary entries.

[6] We stated: "Because defendant objected to the preclusion of the writings, the harmful error standard applies. We must disregard any error unless it was 'clearly capable of producing an unjust result.'" Randone, slip op. at 10 (quoting R. 2:10-2).

because [those] errors did not have the capacity of depriving defendant of his constitutional right to a fair trial."  Id.  at 12.

Defendant argues that "the appellate panel's finding that the trial judge's pretrial ruling with respect to the use of the diary entries was not harmful error is not the same as determining whether a right to relief is present under the Strickland/Fritz test."[7]  In support of his argument that the issues are different, he points to the different standards of proof:  an error must be sufficient to raise a reasonable doubt in the outcome of a jury trial in order to be considered harmful, whereas the second prong of Strickland/Fritz is satisfied if defendant can demonstrate by a preponderance of the evidence that he was prejudiced by counsel's unprofessional mistakes.

We agree with defendant that the analysis of a PCR claim is different from that required under Rule 2:10-2.  We also recognize that the issue on appeal was

---

[7]  To establish a PCR claim of ineffective assistance of counsel, a defendant must satisfy the test formulated in Strickland v. Washington, 466 U.S. 668, 687 (1984), and adopted by our Supreme Court in State v. Fritz, 105 N.J. 42, 58 (1987), first by showing "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment," Fritz, 105 N.J. at 52 (quoting Strickland, 466 U.S. at 687); then by proving he suffered prejudice due to counsel's deficient performance, Strickland, 466 U.S. at 687, 691-92.  Defendant must show by a "reasonable probability" that the deficient performance affected the outcome.  Fritz, 105 N.J. at 58.

the averred error by the trial judge in precluding the evidence. Here, defendant claims his trial counsel was ineffective for failing to turn over that evidence in pretrial discovery. Although the arguments have some common facts, they are discrete. We will, therefore, especially in light of our conclusion on direct appeal that "defense counsel violated the reciprocal discovery [Rule]," Randone, slip op. at 11, consider the substantive merits of his argument which was not procedurally barred.

Our review of the diary entries and trial testimony leads us to conclude defendant was not prejudiced by the preclusion of those entries. As we noted on direct appeal,

> [d]efense counsel was able to elicit testimony from D.C. similar to that contained in the writings, including that: D.C.'s mother hit her frequently; D.C. was sometimes afraid of her mother; defendant treated D.C. well and was "more like a father than [the boyfriend]"; D.C. told her mother that she liked defendant and wanted to go to his apartment; D.C.'s mother told her to lie to the police and DYFS about the mother's drinking; and D.C. told DYFS staff that her mother drank and hit D.C.
>
> [Id. at 12-13 (second alteration in original).]

We also determined the lead detective in the case

> testified about the content of the writings, stating that "[s]ome of them were cards, some of them were letters stating [D.C.'s] love for [defendant]." He characterized

the letters as "odd," but stated that there was nothing negative about defendant in the letters that would lead him to believe that defendant was sexually assaulting D.C.

[Id. at 13 (alterations in original).]

And, as defendant's trial counsel noted during his summation, in discrediting D.C.'s contention that she went to defendant's apartment only because her mother sent her there against her will, D.C.'s sister testified D.C. went to defendant's apartment "all the time" and that she wanted to go there. "[H]er sister testified that she went over there frequently and she went over there willingly, [and] that she liked [defendant]."

Trial counsel continued:

And . . . you heard the circumstances[,] . . . the overall . . . picture here of what was going on. And [defendant] was nice not only to [D.C.] but to all of the children, that he did things for them, that he was kind to them, and he treated them better . . . in a lot of ways than . . . their mother did.

Because defendant was able to elicit testimony that was almost identical to the contents of the diary entries, he cannot establish he was prejudiced by counsel's failure to provide the writings in discovery. As such, the PCR court correctly denied his claim without granting an evidentiary hearing.

We also determine the PCR court properly denied defendant's claim, without an evidentiary hearing, that his "trial attorney [was ineffective because he] did not prepare him to testify . . . or consult with him at any time prior to trial as to the benefits and consequences that may result. Defendant was unable to make an informed decision" before he waived his right to testify.

The trial judge addressed defendant during trial, telling him:

> You have a right to testify. If you do, you could be cross-examined by [the State]. I already made a ruling as to certain prior convictions of yours that might be used by her. A jury could hear the fact that you were convicted of certain things in terms of the crime and the degree because it's not the same as what you're charged with here. I made that ruling so you would be subjected to cross-examination and also those items would come out and the jury would hear them.
>
> You also have the right to remain silent. You have the right not to say a thing and I could give a jury charge and the charge would be that the jury is not to consider for any purpose or any manner, way, shape or form, in arriving at your verdict, the fact that [defendant] did not testify nor should that fact enter into your deliberations or discussions in any manner in any way, shape or form.

The judge continued, referring to a jury instruction:

> [Defendant] is entitled to have you, the jury, consider all the evidence but he's entitled to the presumption of innocence even if he doesn't testify because it is his constitutional right to remain silent and that should not be held against him.

The trial judge then asked defendant if it was his desire to testify or remain silent; defendant responded, "[s]ilent."

The judge followed up with questions regarding the basis for defendant's choice:

> [THE COURT]: And you did that after discussing that with [defense counsel]?
>
> [DEFENDANT]: Yes.
>
> [THE COURT]: You had enough time to speak to him?
>
> [DEFENDANT]: Yes.
>
> [THE COURT]: Satisfied with his services?
>
> [DEFENDANT]: Yeah.
>
> [THE COURT]: Is that a voluntary decision on your part?
>
> [DEFENDANT]: Yeah.
>
> [THE COURT]: Anybody pressure you one way or the other?
>
> [DEFENDANT]: No.

The record belies defendant's assertion that he made an uninformed, uncounseled decision not to testify. "Defendant may not create a genuine issue

of fact, warranting an evidentiary hearing, by contradicting his prior statements without explanation." Blake, 444 N.J. Super. at 299.

Further, defendant did not divulge what he would have offered if he testified at trial, proffering "specific facts and evidence supporting his allegations." State v. Porter, 216 N.J. 343, 355 (2013). Nor did he explain how his testimony would have impacted the outcome of the trial, satisfying the second Strickland/Fritz prong. "[I]n order to establish a prima facie claim, a petitioner must do more than make bald assertions that he was denied the effective assistance of counsel." State v. Cummings, 321 N.J. Super. 154, 170 (App. Div. 1999). Defendant failed to meet that threshold. See State v. Preciose, 129 N.J. 451, 462-63 (1992); R. 3:22-10(b). Furthermore, an evidentiary hearing cannot be used to explore PCR claims. See State v. Marshall, 148 N.J. 89, 157-58 (1997). As such, an evidentiary hearing was properly denied.

Finally, defendant claims his trial counsel was ineffective because he failed to call a DYFS caseworker to testify at trial regarding a 2008 investigation into D.C.'s allegations which DYFS determined were "unfounded." Defendant averred at the evidentiary hearing he told his counsel of a letter stating as much, and that counsel's decision not to call the caseworker was "non-sensical,"

because the caseworker would have "explain[ed] why [DYFS] concluded the sexual assault allegations were 'unfounded,'" and could have altered the jury's verdict because she was "an objective state agen[t]" who contradicted the State's chief witness, D.C.

Trial counsel testified at the evidentiary hearing that he did not call the caseworker to discuss the DYFS investigation or the confirmatory letter because he was able to elicit from D.C. that she did not report that she was sexually assaulted to DYFS, the Prosecutor's Office or an examining doctor in 2008, and that she previously lied in denying allegations of an assault. As such, counsel determined that the caseworker's testimony would be repetitive.

We review defense counsel's actions under the familiar standards synopsized by the Court in State v. Arthur, 184 N.J. 307, 318-19 (2005) (alterations in original):

> In determining whether defense counsel's representation was deficient, "'[j]udicial scrutiny . . . must be highly deferential,' and must avoid viewing the performance under the 'distorting effects of hindsight.'" State v. Norman, 151 N.J. 5, 37 (1997). Because of the inherent difficulties in evaluating a defense counsel's tactical decisions from his or her perspective during trial, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be

considered sound trial strategy.'" Strickland, 466 U.S. at 689.

> In determining whether defense counsel's alleged deficient performance prejudiced the defense, "[i]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceedings." Id. at 693. Rather, defendant bears the burden of showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694.

We agree with defendant that the PCR court did not consider "(1) the credibility of all witnesses, including the likely impeachment of the uncalled defense witnesses; (2) the interplay of the uncalled witnesses with the actual defense witnesses called; and (3) the strength of the evidence actually presented by the prosecution." State v. L.A., 433 N.J. Super. 1, 16-17 (App. Div. 2013) (quoting McCauley-Bey v. Delo, 97 F.3d 1104, 1106 (8th Cir. 1996)). Of course, the PCR court was not presented the opportunity to assess the caseworker's credibility because she was not called to testify at the evidentiary hearing.

Defendant argues in his merits brief that, during cross-examination of D.C. at trial, defendant's counsel was able to portray D.C. as a liar because she did not inform authorities in 2008 she was being sexually assaulted. In making

13

that point, defendant highlights that portion of the cross-examination in which D.C. admitted a caseworker inquired if she was sexually assaulted, suggesting the reason the allegations of sexual assault were unfounded is because D.C. lied. Even accepting that argument, the caseworker still would not have been allowed to give her opinion about D.C.'s credibility, State v. McLean, 205 N.J. 438, 453 (2011), or whether the charges based on D.C.'s allegations against defendant had any merit because that determination was to be made by the jury, see State v. Odom, 116 N.J. 65, 77 (1989) ("[w]e have repeatedly and consistently recognized that a jury's determination of criminal guilt or innocence is its exclusive responsibility"); see also State v. Frisby, 174 N.J. 583, 593-94 (2002) (finding a police officer testifying as a fact witness was not allowed to opine regarding whether the defendant committed the crime).

To rebut the State's evidence, including D.C.'s explicitly-detailed account regarding defendant's first sexual assault, defendant's trial counsel emphasized in summation that D.C.'s multiple lies to authorities, and that "there was an investigation conducted [in 2008] and there were no charges brought against" defendant. Counsel argued to the jury:

> It tells you that she lied at some point in this case, that she lied to the authorities, and that she's comfortable with lying to the authorities, I would submit, ladies and gentlemen. As a result of the

influence of her mother, I would suggest to you where she had been – where that type of behavior was condoned in the household, she was able to lie to the authorities and I would submit to you, ladies and gentlemen, she's able to lie to you in court[.]

The defense strategy was to paint D.C. as a liar about: her relationship with defendant; the reasons she went to defendant's residence; and her allegations of sexual assault. As defendant's counsel told the jury, "[a]ll of the proof regarding the aggravated sexual assault and sexual assault is riding on [D.C.'s] credibility. There's no other evidence. There's no medical evidence, no scientific evidence, nothing at all. No one heard anything. She didn't say anything to anyone to corroborate anything she says regarding that."

According the presumption that counsel's conduct fell within the range of reasonable professional assistance, Arthur, 184 N.J. at 318-19, and adhering to the tenet that "an otherwise valid conviction will not be overturned merely because the defendant is dissatisfied with his or her counsel's exercise of judgment during the trial," State v. Castagna, 187 N.J. 293, 314 (2006), we determine defendant has not established his counsel's performance was deficient. Nor, in light of the fact that counsel was able to argue that the prior investigation did not result in any charges against defendant, do we conclude

there is a reasonable probability, but for the failure to call the caseworker, the result of the trial would have been different.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

16