40 A.3d 1155 (2012)
425 N.J. Super. 258
STATE of New Jersey, Plaintiff-Respondent,
v.
Ronald L. JONES, Jr., a/k/a Ronald L. Jones, Defendant-Appellant.
No. A-5186-10T2
Superior Court of New Jersey, Appellate Division.
Submitted March 27, 2012.
Decided April 17, 2012.
*1157 Law Office of Wayne Powell, L.L.C., Cherry Hill, attorneys for appellant (Wallace R. Wade, on the brief).
John T. Lenahan, Salem County Prosecutor, attorney for respondent (Lisa M. *1158 Riether, Assistant Prosecutor, of counsel and on the brief).
Before Judges BAXTER, NUGENT and CARCHMAN.
The opinion of the court was delivered by
BAXTER, J.A.D.
In this appeal from his conviction on charges of possession of cocaine with intent to distribute, defendant challenges the admission of other-crime evidence under N.J.R.E. 404(b), asserting that the admission of evidence that he also possessed oxycodone was unfairly prejudicial in light of the fact that he was not charged with that offense. He asserts that the oxycodone testimony established nothing other than the criminal propensity that N.J.R.E. 404(b) forbids. We agree with defendant's contention, and hold that where the oxycodone evidence was admitted for the ostensible purpose of aiding the jury in determining whether defendant possessed the cocaine for personal use, or instead with the intention of selling it, the probative value of the oxycodone evidence was outweighed by its prejudice, thereby requiring its exclusion. The error was compounded by a limiting instruction that failed to advise the jury of any permissible purpose for which the oxycodone evidence could be used.
Defendant's right to a fair trial was further eroded by the admission of expert testimony on drug distribution that violated the proscriptions applicable to such testimony, as the questions were not posed in hypothetical format, the expert repeatedly referred to defendant by name, the expert's opinion was phrased in language identical to the title of the criminal statute, and the expert impermissibly expressed an opinion on defendant's guilt.
We reverse defendant's conviction and remand for a new trial, as these errors were clearly capable of producing an unjust result.

I.
On January 22, 2010, Detective Darryl Saunders of the Salem County Prosecutor's Office apprehended defendant while defendant was walking on Broadway in Salem. Saunders testified that he advised defendant that he, Saunders, had obtained a search warrant authorizing a search of defendant's person. At the Salem police station, Saunders escorted defendant to the bathroom, and directed him to remove his clothing. Once defendant disrobed, Saunders located ninety-nine bags of cocaine, and four oxycodone pills, in defendant's groin area.
The State also called Lieutenant Timothy Haslett of the Salem County Prosecutor's Office. Haslett explained that he had been employed in the narcotics field for approximately ten years, had received advanced training in narcotics and narcotics distribution, and had been qualified as an expert in that field on numerous occasions. The judge permitted him to provide expert testimony on narcotics distribution. Because it is Haslett's testimony that gives rise to the claims defendant presents on appeal, we describe that testimony in some detail.
At the outset of Haslett's testimony, the prosecutor asked Haslett to render an opinion on whether the ninety-eight bags of cocaine[1] found in defendant's possession *1159 were possessed for his personal use or instead with the intention to distribute. Haslett responded:
My expert opinion was that the bags were possessed with the intent to distribute same.
Asked to elaborate, Haslett explained to the jury that he typically begins his analysis by reviewing the lab reports because it is important "to see how much of a particular substance I'm dealing with." After noting that all ninety-eight bags of cocaine were "similar [in] size, weight, shape," Haslett opined that defendant did not possess the cocaine for personal use. He explained that because each such bag costs $10 when purchased "on the street," purchasing ninety-eight bags of cocaine would cost $980 "if you were a user." Haslett proceeded to explain that buying ninety-eight bags individually would make no sense from an economic perspective, which contributed to his conclusion that defendant did not possess the ninety-eight bags of cocaine for personal use. He explained:
Now, that would be highly, highly uneconomical. Because I know based on my experience, the many arrests I've made, the many interviews that I've done, that half of an ounce of cocaine, which is approximately 14.17 grams costs about $600.
Mr. Jones was found to be in possession of 98 bags, each weighing an estimated.12 grams, which equals 11.7 grams of cocaine, which is less than half an ounce.
Hence, he would have overpaid hundreds of dollars to purchase cocaine in that manner.
If Mr. Jones merely wanted to use cocaine, he would go out, buy a half ounce of cocaine for $600 and use it.

Mr. Jones was in possession of individual bags which were destined for sale. No user of cocaine in his right mind would overspend over $300 for cocaine. It just wouldn't make any sense. They would go out, buy a half ounce of cocaine and use it.
These bags are packaged in street level distribution amounts, i.e., an individual drug dealer would go out in the street and he'll sell them by the bag or two bags or three bags for $10 each, $10, $20, $30. He'll sell them in that manner. That's one of my prongs.
[(Emphasis added).]
According to Haslett, there were several other factors leading him to conclude that defendant possessed the cocaine not for personal use, but with the intention of selling it. Haslett explained that because "cocaine is one of the most ... addictive substances in the world," a buyer will want to "use it as quickly as possible ... [and will] have some type of paraphernalia on [his] person to use it." Such paraphernalia typically found "during an arrest of users of cocaine" would include "pipes, spoons, straws, things ... indicative of use." Haslett testified that defendant did not have any such paraphernalia, stating that "[t]hese items were not discovered on Mr. Jones'[s] person."
A third factor supporting Haslett's conclusion that defendant possessed the cocaine with the intention of selling it was "the exact location he was arrested, East Broadway and Walnut Street," which is "a well-known open-air drug market within the City of Salem."
A fourth factor that "play[ed] into [Haslett's] expert opinion" that defendant possessed the cocaine for ultimate distribution *1160 was "the location of the narcotics on Mr. Jones'[s] person." Haslett explained that generally when individuals are arrested who have purchased cocaine for their own personal use, "they have [the cocaine] in a readily accessible area because obviously they want to use [it]," whereas defendant "was found with narcotics highly secreted on his body."
Toward the end of Haslett's direct examination, the prosecutor asked him if it was possible that defendant purchased the ninety-eight bags to, in effect, stockpile them so that it would not be necessary for him "to go back out and purchase more drugs for personal use." Haslett answered "no," explaining that because cocaine is "readily available for sale in Salem City where [defendant] was arrested and... resided," any individual who wants to purchase cocaine in Salem "right this second,... can go out [on] the street and he can buy it.... So there's no reason to stockpile.... We don't live in ... Montana where we only may have one or two metropolises where ... narcotics are even distributed and we live four or five hours away." In such circumstances, according to Haslett, it might "make sense to buy wholesale," but not in Salem.
As a sixth reason supporting his conclusion that defendant did not possess the cocaine for personal use, Haslett explained that, in his opinion, the fact that defendant had hidden the cocaine in his groin area was typical of a person who intends to sell the cocaine, not a person who possesses it for personal use. Haslett explained that a dealer will "want to hide the narcotics [because] if [he is] arrested or stopped on the street, and for whatever reason patted down, that large amount of narcotics if it was in his pocket[,] would either be visible or a police officer could maybe even be able to see in[to] his pocket without conducting a search." In contrast, "if it's [hidden,] since it is a larger amount, an officer wouldn't be able to see that in plain view."
At the conclusion of Haslett's direct examination, the prosecutor asked him about defendant's possession of oxycodoneeven though defendant was not charged with possession of that substance. The prosecutor asked if defendant's possession of the four oxycodone tablets had any bearing on whether defendant possessed the cocaine with the intention of selling it. Haslett answered in the affirmative, noting that defendant having possession "of two different types of narcotics" was significant. Haslett explained:
Another trend we've been finding is that dealers of controlled substances will try and possess multiple types of substances, be it cocaine and marijuana, be it heroin and cocaine, be it cocaine and oxycodone, be it cocaine and hydrocodone to accommodate different tastes per se.
Prescription medication such as those that were seized in this case[, the oxycodone,] have become quite a hot bed of narcotics activity because of the accessibility of them, because there's so much out there. Narcotics dealers are getting their hands on these substances and being able to deal them as well as the general run-of-the-mill narcotics such as cocaine and marijuana.
The very last question the prosecutor posed to Haslett was:
Now, based upon everything you've indicated you are confident still in your conclusion that these 98/99 bags were possessed with the intent to distribute as opposed to personal use? They were possessed with the intent to distribute as opposed to personal use?

[(Emphasis added).]
Haslett answered: "Yes." At no point during Haslett's testimony did defendant interpose any objection.
*1161 At the conclusion of Haslett's direct testimony, the judge informed the parties that following defendant's cross-examination of Haslett, he intended to provide the jury with a limiting instruction concerning Haslett's reference to defendant's possession of oxycodone. The judge stated that such an instruction was necessary because defendant was not charged with possession of oxycodone. The record does not indicate whether the subject of a limiting instruction had been raised by one of the parties off the record, or whether instead the judge raised the issue sua sponte without any prior discussion. The judge did not conduct a hearing outside the presence of the jury to determine the admissibility of this N.J.R.E. 404(b) evidence. In any event, following cross-examination, the judge provided the following instruction to the jury:
Folks, before we call our next witness, I want to give you what's called a limiting instruction.
[W]hen I gave you ... opening instructions, I indicated that [defendant] was charged with possession of cocaine, possession with the intent to distribute cocaine and then school zone and public housing [offenses].
He has not been charged with possession of oxycodone.... I've allowed testimony regarding the oxycodone for a very limited purpose. And that is, as you've just heard, part of the basis of Lieutenant Haslett's opinion as to whether the cocaine was possessed with the intent to distribute, part of his analysis was that there was a second type of drug. And he just testified as to why that might happen and why that could be evidence of distribution as opposed to possession for your own use.
And that's the only thing you can use the oxycodone testimony for.
So if you determinethe first you'll have to determine in analyzing Lieutenant Haslett's testimony is whether there was cocaine, whether there was oxycodone.
But if you find that there was oxycodone, you can't say, "Ah, if he had oxycodone, he must have been intending to distribute the cocaine." You can only use the oxycodone evidence in your assessment as to whether Mr. Jones possessed the cocaine with the intent to distribute. Okay?
Defendant interposed no objection to that limiting instruction, nor did he ask the judge to strike the oxycodone testimony from the record. The defense rested without calling any witnesses.
The jury returned a verdict finding defendant guilty on charges of third-degree possession of a controlled dangerous substance (CDS), cocaine, N.J.S.A. 2C:35-10(a)(1) (count one); second-degree possession of cocaine with intent to distribute, N.J.S.A. 2C:35-5(b)(2) (count two); third-degree possession of cocaine with intent to distribute within 1000 feet of a school, N.J.S.A. 2C:35-7 (count three); and second-degree possession of cocaine with intent to distribute within 500 feet of public housing, N.J.S.A. 2C:35-7.1 (count four).
After merging count one with count two, the judge sentenced defendant on count four to a thirteen-year prison term, subject to a five-year parole ineligibility term. On count two, the judge sentenced defendant to an eight-year term of imprisonment, concurrent to count four. On count three, the judge imposed a four-year prison term, concurrent to the sentence imposed on counts two and four.
On appeal, defendant raises the following claims:
I. APPELLANT WAS DEPRIVED OF A FAIR TRIAL BY THE STATE'S IMPROPER QUESTIONING REGARDING APPELLANT'S PRETRIAL SILENCE AND THE COURT'S FAILURE TO IMMEDIATELY *1162 GIVE A LIMITING INSTRUCTION SUA SPONTE ACTED TO DEPRIVE APPELLANT OF HIS CONSTITUTIONAL PROTECTIONS.
II. THE STATE'S EXPERT IMPROPERLY COMMENTED ON THE DEFENDANT'S GUILT DURING HIS TESTIMONY REGARDING NARCOTICS CRIMES.
III. THE ADMISSION OF EVIDENCE OF CRIMINALITY FOR WHICH DEFENDANT WAS NOT INDICTED OPERATED TO DEPRIVE DEFENDANT OF A FAIR TRIAL.
We agree with the claims defendant advances in Points II and III.[2] We reverse defendant's conviction and remand for a new trial.

II.
Beginning with the Court's landmark decision in State v. Odom, 116 N.J. 65, 79-83, 560 A.2d 1198 (1989), and continuing over the next twenty-one years, the Court has repeatedly imposed limits on the State's use of expert witness testimony in drug distribution prosecutions. See State v. McLean, 205 N.J. 438, 461-63, 16 A.3d 332 (2011) (reversing the defendant's drug distribution conviction when the arresting officer testified that he believed he had witnessed a hand-to-hand narcotics transaction, because such testimony improperly expressed an opinion on the defendant's guilt and did not concern a matter beyond the common understanding of the jurors); State v. Reeds, 197 N.J. 280, 295-97, 962 A.2d 1087 (2009) (reversing the defendant's conviction where the narcotics expert improperly testified that all three occupants of the vehicle were in "constructive possession with the intent to distribute," as the opinion impermissibly "track[ed] the `precise terminology' ... of [the] applicable criminal statute" and expressed a direct opinion on the defendant's guilt); State v. Nesbitt, 185 N.J. 504, 518-19, 888 A.2d 472 (2006) (affirming the defendant's conviction but noting that the hypothetical posed to the narcotics expert improperly used the "precise term" from the criminal statute); State v. Summers, 176 N.J. 306, 315-16, 823 A.2d 15 (2003) (finding that the hypothetical posed to the expert witness too closely mirrored the facts at trial, but upholding the defendant's conviction as the hypothetical did not refer to the defendant by name and did not ask for an opinion as to the defendant's guilt); State v. Berry, 140 N.J. 280, 301-04, 658 A.2d 702 (1995) (affirming the defendant's conviction and permitting the expert to offer testimony about methods of drug distribution and about the roles played by each participant in street-level drug transactions, provided that such questions are posed in a hypothetical format).
Our own decisions follow a similar path. For example, in State v. Baskerville, 324 N.J.Super. 245, 256-57, 735 A.2d 39 (App. Div.1999), certif. denied, 163 N.J. 10, 746 A.2d 456 (2000), we held that the officer's testimony describing defendant's behavior in exchanging a small item for paper currency was not beyond the understanding of the jury, and impermissibly afforded the State the opportunity to use an expert to merely repeat the facts and add an opinion on the ultimate issue. Similarly, in State v. Singleton, 326 N.J.Super. 351, 353-54, 741 A.2d 168 (App.Div.1999), we concluded that the State's expert should not have been permitted to opine, in a response to a hypothetical question, "that defendant was engaging in a street level distribution scheme ... [and] that this individual was *1163 selling to different individuals with different needs." We held that such expert testimony "cross[ed] the line of permissibility" as it "offer[ed] an opinion" that the defendant had engaged in a drug transaction. Id. at 354, 741 A.2d 168.
In the more than two decades since the Court issued its seminal decision in Odom, the Court has never retreated from the principles it articulated there. Indeed, in McLean, supra, 205 N.J. at 454-55, 16 A.3d 332, the Court reiterated the "safeguards" applicable to expert testimony that it had announced in Odom. As in the present matter, the defendant in Odom asserted that the cocaine found on his person was for his own use, and that he had no intention of selling it. Odom, supra, 116 N.J. at 70, 560 A.2d 1198. In McLean, the Court described the teachings of Odom in the following terms:
In an effort to reduce the risk that an expert's opinion will cross the line into an impermissible one by directly opining on guilt, this Court also established a framework for expert opinions by requiring the use of a hypothetical question that recites the relevant facts as the basis for the expert's opinion. Although we ... allowed the use of detailed hypotheticals that mirror the facts that the particular prosecution, their use is not unbounded. Rather, we ... imposed a number of safeguards relating to hypotheticals, including that defendant's name not be included in the question or answer, that the expert answer should, "to the extent possible," avoid the precise language of the statute that defines the crime, that the expert should be limited to the facts set forth in the hypothetical, and that the judge should instruct the jury that they are not bound by the expert's opinion because the decision about guilt is theirs alone.

[McLean, supra, 205 N.J. at 454-55, 16 A.3d 332 (internal citations omitted).]
In our application of Odom and McLean to the matter presently before us, we must not lose sight of the fact that defendant raised no objection to any portion of Haslett's testimony. For that reason, the plain error rule applies and we will reverse on that ground only if the error is "clearly capable of producing an unjust result." R. 2:10-2. Our careful review of the record satisfies us that the plain error standard is satisfied. The State's proofs did not include any evidence that defendant was observed making a sale of narcotics or that he was observed in any hand-to-hand transaction in which paper currency was exchanged for a small item. Instead, the State's ability to secure a conviction on the grounds of possession of CDS with intent to distribute depended entirely on the jury's willingness to accept Haslett's opinion that defendant possessed the cocaine not for personal use, but instead with the intention of selling it. Under such circumstances, Haslett's expert opinion did not play a secondary or supportive role, but was instead the pivotal evidence upon which the jury's guilty verdict was based. For that reason, any error in the scope of Haslett's testimony, or in the form of the testimony he provided, cannot be deemed harmless. We now proceed to an analysis of whether the opinion Haslett offered violated the precepts of Odom, supra, 116 N.J. at 79-83, 560 A.2d 1198.
Haslett's testimony violated the Odom standards. First, the prosecutor did not pose her questions to Haslett in a hypothetical format, as Odom requires, id. at 82, 560 A.2d 1198. Instead, all of the questions, and all of Haslett's answers, were a direct statement of the facts that applied to defendant himself. As we have noted, Haslett described where defendant secreted the cocaine on his body, how many bags of cocaine he possessed, whether *1164 defendant was in possession of any paraphernalia used for inhaling or smoking the cocaine, and where he was standing at the time of his arrest.
A second violation of Odom occurred when Haslett used the precise terminology of the statute, in contravention of Odom's teaching that the "expert's answer should avoid the precise terminology of the statute defining the criminal offense and its necessary elements." Id. at 82, 560 A.2d 1198. As we have noted, when answering the prosecutor's question of whether the ninety-eight bags of cocaine found in defendant's possession were possessed for his personal use or instead with the intention to distribute, Haslett responded, "my expert opinion was that the bags were possessed with the intent to distribute same." (Emphasis added). This answer precisely tracked the language of the applicable statute.
And third, in violation of Odom, ibid., Haslett repeatedly used defendant's name, constantly referring to him as "Mr. Jones," rather than speaking in hypothetical terms.
A fourth violation of Odom occurred when Haslett expressed a direct opinion as to defendant's guilt, commenting that the cocaine was not possessed for personal use, but was instead "destined for sale." As we have discussed, an expert is permitted to describe the packaging of the drugs, the quantity possessed, where the drugs were hidden, and other such factors, and based on those factors, the expert may proceed to express an opinion on the ultimate issue of "whether the drugs were possessed for personal use or for the purpose of distribution." Ibid. But what the expert is not permitted to do is express an opinion that the quantity of drugs possessed, the way they were packaged, and where they were hidden, means that the defendant on trial possessed the drugs with the intention of selling them. That is exactly what Haslett did here, although the fault lay in the way the prosecutor posed the question. The prosecutor asked Haslett if it was "possible that Mr. Jones had those 98, 99 bags for personal use." At the conclusion of his lengthy answer, rather than express an opinion in the hypothetical terms that McLean, supra, 205 N.J. at 454, 16 A.3d 332, requires, Haslett answered that "Mr. Jones was in possession of individual bags which were destined for sale." Instead of asking whether it "was possible that Mr. Jones had those 98, 99 bags for personal use," the prosecutor should have asked Haslett whether "it was possible that a person could possess 98, 99 bags for personal use."
For all of these reasons, we conclude that the manner in which Haslett expressed his opinion violated four cardinal precepts of Odom, and that such violations were "clearly capable of producing an unjust result." R. 2:10-2. The harm from this testimony was compounded by Haslett's improper discussion of the four oxycodone tablets found in defendant's possession. We now address that subject.

III.
In Point III, defendant asserts that the introduction of evidence concerning his possession of oxycodone, for which he was not indicted, denied him a fair trial. Again, as defendant did not object to Haslett's testimony concerning oxycodone, we will not reverse on this ground unless the error is "clearly capable of producing an unjust result." Ibid.
As defendant correctly states, he was not charged with possession of oxycodone. For that reason, admission of evidence on that subject was subject to the provisions of N.J.R.E. 404(b), which prohibits the introduction of evidence concerning *1165 "other crimes, wrongs, or acts [when offered] to prove the disposition of a person" to engage in unlawful conduct. "`The underlying danger of admitting other-crime evidence is that a jury may convict the defendant because he is a bad person in general.'" State v. Rose, 206 N.J. 141, 159, 19 A.3d 985 (2011) (quoting State v. Cofield, 127 N.J. 328, 336, 605 A.2d 230 (1992)). As the Court observed in Cofield, "the prosecution may not introduce evidence of other criminal acts of the accused unless the evidence is introduced for some purpose other than to suggest that because the defendant is a person of criminal character, it is more probable that he committed the crime for which he is on trial." Cofield, supra, 127 N.J. at 335, 605 A.2d 230.
In Cofield, the Court articulated a four-part test to determine if evidence of uncharged misconduct is admissible at trial despite the general prohibition on the admission of such evidence in N.J.R.E. 404(b). The four-prong test requires a court to determine, in a hearing held outside the presence of the jury, whether the evidence of the other crime is: 1) "relevant to a material issue in dispute"; 2) "similar in kind and reasonably close in time to the offense charged"; 3) "clear and convincing"; and 4) possesses a "probative value" that is "not outweighed" by its capacity for prejudice. Id. at 338, 605 A.2d 230. Only if those criteria are satisfied should the N.J.R.E. 404(b) evidence be admitted. Ibid. In Rose, the Court affirmed its continued adherence to the Cofield four-part test. Rose, supra, 206 N.J. at 160, 19 A.3d 985.
The Court emphasized in Rose that although we generally review decisions related to the admission of evidence for an abuse of discretion, "[t]hat deferential approach" will not apply in instances where, as here, the trial court did not conduct a Cofield hearing. Id. at 157-58, 19 A.3d 985. In those circumstances, our review is de novo. Id. at 158, 19 A.3d 985.
Here, the trial court permitted Haslett to express an opinion that defendant's possession of oxycodone made it more likely that he possessed the cocaine for purposes of distribution. As we have noted, Haslett explained that drug dealers will typically sell more than one type of narcotic to appeal to a broader section of the drug-buying public. While that evidence arguably satisfies the first three prongs of the Cofield test, as it was relevant to a material issue, similar in kind and reasonably close in time to the offense charged, and was clear and convincing, Cofield, supra, 127 N.J. at 338, 605 A.2d 230, it does not satisfy the fourth prong, as the probative value of the evidence concerning defendant's possession of oxycodone evidence was outweighed by its capacity for prejudice. Ibid.
Specifically, the oxycodone testimony was of marginal probative value, as Haslett had already provided, in great detail, six different reasons to support his conclusion that defendant possessed the cocaine with the intention of distributing it, and not for his personal use. The highly prejudicial reference to defendant's possession of yet another type of illicit substance added little to the evidence that was already before the jury, but had an extraordinary propensity to prejudice the jury against defendant, for it signified that defendant was potentially guilty of not only the offenses with which he was chargedall of which involved cocainebut was also guilty of another crime by unlawfully possessing prescription narcotics. Our plenary review leads us to conclude that because the probative value of the evidence of oxycodone was "outweighed by its apparent prejudice," Cofield, supra, 127 N.J. at 338, 605 A.2d 230, the admission of the oxycodone evidence was error.
*1166 The error concerning the oxycodone testimony was compounded by the failure of the judge to issue the careful limiting instruction that Cofield, id. at 341, 605 A.2d 230, and Rose, supra, 206 N.J. at 161, 19 A.3d 985, require. When N.J.R.E. 404(b) evidence is admitted, the judge is required to provide a limiting instruction that "inform[s] the jury of the purposes for which it may, and for which it may not, consider the evidence of defendant's uncharged misconduct, both when the evidence is first presented and again as part of the final jury charge." Rose, supra, 206 N.J. at 161, 19 A.3d 985. The limiting instruction is designed to explain to the jury, the "fine distinction to which [the jury] is required to adhere." Ibid. (citation and internal quotation marks omitted).
Here, the limiting instruction the judge provided was a tautology. The judge explained to the members of the jury that they were prohibited from concluding that "if he had oxycodone, he must have been intending to distribute the cocaine." Yet, in the next breath, the judge instructed the jurors that they could "only use the oxycodone evidence in [their] assessment as to whether [defendant] possessed the cocaine with the intent to distribute." The jury could not analyze whether the oxycodone made it more likely that defendant intended to distribute the cocaine if the jury was, at the same time, prohibited from using the evidence of the oxycodone as evidence that defendant "must have been intending to distribute the cocaine." Stated differently, the judge's limiting instruction provided the jury with no guidance at all on the permissible use of the oxycodone evidence.
We conclude the oxycodone evidence was improperly admitted, and the limiting instruction that the judge provided did nothing to eradicate the prejudice. The error concerning the admission of the oxycodone evidence exacerbated the prejudice that had already resulted from the Odom violation that occurred during Haslett's testimony. In combination, the two errors were clearly capable of producing an unjust result, R. 2:10-2, and denied defendant a fair trial.
Reversed and remanded for a new trial.
NOTES
[1] Ninety-nine bags were presented to the New Jersey State Police lab for analysis. In keeping with established testing protocols when all of the bags submitted are identical in appearance, the chemist randomly selected only one bag for testing. The contents of that one bag were found to be cocaine, and the chemist rendered a reportand testifiedthat all the bags contained cocaine. Because Haslett was only aware of ninety-eight bags at the time he issued his written report, he confined his testimony accordingly, referring to ninety-eight bags of cocaine, rather than ninety-nine.
[2] In light of that disposition, we do not address the argument defendant presents in Point I.