**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet this opinion is binding only on the
parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2037-15T1

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

NAFEISHA T. BROWN,

    Defendant-Appellant.

_____

Argued March 2, 2017 — Decided May 31, 2017

Before Judges Lihotz and Hoffman.

On appeal from Superior Court of New Jersey,
Law Division, Salem County, Indictment No. 14-
12-0663.

Jaime B. Herrera, Assistant Deputy Public
Defender, argued the cause for appellant
(Joseph E. Krakora, Public Defender, attorney;
Ms. Herrera, of counsel and on the brief).

Derrick Diaz, Assistant Prosecutor, argued the
cause for respondent (John T. Lenahan, Salem
County Prosecutor, attorney; Mr. Diaz, of
counsel and on the brief).

PER CURIAM

On December 3, 2014, a Salem County grand jury returned an

indictment charging defendant Nafeisha Brown with third-degree

aggravated assault, N.J.S.A. 2C:12-1(b) (count one); fourth-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(d) (count two); fourth-degree obstructing administration of law, N.J.S.A. 2C:29-1 (count three); and third-degree resisting arrest, N.J.S.A. 2C:29-2(a) (count four). Defendant moved to dismiss the indictment, which the trial judge granted in part, dismissing counts one and three.

Defendant then moved to exclude the State's evidence of Mobile Video Recorder (MVR) footage from the patrol car of one of her arresting officers. The trial judge denied this motion after a pre-trial hearing; defendant later moved to sanitize the MVR footage, which the judge also denied.

Following trial, a jury found defendant guilty of count two and a lesser-included offense of count four, resisting arrest as a disorderly person, N.J.S.A. 2C:29-2(a). The judge then sentenced defendant to concurrent three-year probationary terms on both counts.

On appeal, defendant argues (1) the trial judge erred by admitting highly prejudicial evidence of other bad acts; (2) the judge should have granted her motion for acquittal on count two because she did not possess a "weapon" as defined by statute, and (3) she received an inequitable and excessive sentence. We have

reviewed the arguments presented in light of the record and applicable law. For the reasons that follow, we affirm.

We first summarize the relevant testimony from the trial record. On June 11, 2014, at approximately 8:00 p.m., Patrolman George Manganaro responded to a reported dispute between a man and a woman at a residence in Penns Grove. On cross-examination, Patrolman Manganaro identified this woman as defendant's relative. The officer did not arrest or charge either person because "it was just a loud talk."

One hour later, at approximately 9:00 p.m., Patrolman Manganaro responded to a reported fight at the same residence. Upon approaching the scene in his patrol car, he observed defendant chasing the man from the first call "around a white Town Car." The officer stopped behind the Town Car and exited his vehicle, at which point he saw defendant throw a white cylindrical object and heard a "metal noise" when the object hit the ground. Police recovered this cylinder, which they later identified as a pepper spray called "Back Off Dog Repellent."

Patrolman Manganaro said he detected the odor of a chemical spray at the scene, which he recognized as pepper spray or oleoresin capsicum spray (OC Spray) due to his training and experience. He noted the substance was an "aerosol," meaning, "once it's in the air anyone that's in that surrounding area will

be contaminated by it[,] and I was contaminated." Because the substance was "all over [his] face" and hands, the officer washed himself with special wipes designed to reduce the effects of the spray.

Patrolman Anthony Minguez, Patrolman Manganaro's supervisor, arrived on the scene and made the decision to take defendant into custody. Patrolman Manganaro attempted to place defendant in handcuffs; however, "she kept tensing her arms and was resisting." He said defendant persisted in pulling her arms away from him while using profane language. Because of defendant's resistance, the officer "arm barred" her and brought her to the front of the Town Car, where he and Patrolman Minguez were able to secure her in handcuffs.

The officers then placed defendant in the back of a patrol car. Defendant "continued to kick the doors and kick around in the car making the car move," which prompted the officers to place her in shackles. Patrolman Manganaro described defendant's demeanor as "[v]ery combative."

At trial, the State played some of the MVR footage from the patrol car for the jury. The tape depicted defendant's arrest outside the patrol car, and it also contained the audio of statements defendant made from inside the car after her arrest.

Both officers also testified regarding their experience with OC Spray. According to Patrolman Manganaro, OC Spray is composed of ground-up peppers. The bottle police retrieved at the scene contained oleoresin capsicum, the same ingredient as a bottle of police-issue OC Spray, but at a lower level of concentration and strength. Patrolman Manganaro read the label of the bottle to the jury, which stated, "[B]ack off dog repellant, personal protections against dog attacks. . . . Caution: irritating spray. . . . Strongly irritating to eyes, nose and skin."

Patrolman Manganaro related getting sprayed with OC Spray during his training and explained it affects an individual's vision, balance, and breathing. The effects of the spray last for approximately thirty minutes but do not cause permanent damage. Patrolman Minguez similarly noted the spray causes blurred vision, breathing issues, itching, and confusion. He also noted residual exposure would cause a burning sensation and coughing, only less severe than direct exposure.

After the trial court sentenced defendant, she filed this appeal. She presents the following arguments for consideration:

POINT I

THE TRIAL COURT ERRED IN ADMITTING HIGHLY PREJUDICIAL EVIDENCE OF BROWN'S OTHER BAD ACTS ON THE DATE IN QUESTION. (PARTIALLY RAISED BELOW).

POINT II

BROWN MUST BE ACQUITTED OF UNLAWFUL POSSESSION OF A WEAPON UNDER N.J.S.A. 2C:39-5d BECAUSE THE ALLEGED "WEAPON," A CAN OF DOG REPELLENT, FAILS TO SATISFY N.J.S.A. 2C:39-1'S REQUIREMENT THAT A "WEAPON" BE "READILY CAPABLE OF LETHAL USE OR OF INFLICTING SERIOUS BODILY INJURY."

POINT III

BROWN SHOULD RECEIVE A NEW SENTENCING HEAIRNG BECAUSE HER SENTENCE WAS INEQUITABLE GIVEN HER WILLINGNESS TO ACCEPT THE PLEA BARGAIN FOR A LESSER SENTENCE, AND BECAUSE IT WAS EXCESSIVE GIVEN THE PREPONDERANCE OF MITIGATING FACTORS

We address these points in the order presented.

I.

Defendant first argues the trial judge erred by permitting the State to introduce the irrelevant and highly prejudicial post-arrest MVR footage of defendant in the police patrol car. We review the trial judge's evidentiary rulings for an abuse of discretion. State v. Fortin, 178 N.J. 540, 591 (2004).

The MVR footage consisted of two tapes. The first depicted defendant's arrest outside of the patrol car, and it also contained audio of defendant's statements in the patrol car following her arrest. These statements essentially consisted of her using derogatory and profane language towards the arresting officer. The second tape captured audio and video of defendant's actions while she was in the back seat of the patrol car.

During the proceedings, defendant made several arguments to exclude the post-arrest footage and to sanitize the profane language, claiming it was irrelevant and prejudicial to her defense. The trial judge ultimately permitted the State to play the first video for the jury, including the audio of defendant's post-arrest statements in the patrol car, finding they were "allegedly corroborative of what the [o]fficer encountered in the street and the way that [defendant] continued to act within the car." The judge concluded the statements would assist the jury in their determination of whether defendant resisted arrest, and he found the potential prejudice did not outweigh the probative value.

On appeal, defendant argues the judge should have excluded the evidence of her post-arrest conduct as prohibited "other crimes" evidence under N.J.R.E. 404(b). The State responds that the evidence was intrinsic to the charge for resisting arrest and therefore need only be analyzed under N.J.R.E. 403, not under N.J.R.E. 404(b). See State v. Rose, 206 N.J. 141, 177-78 (2011). "[E]vidence that is intrinsic to the charged crime is exempt from the strictures of Rule 404(b) even if it constitutes evidence of uncharged misconduct that would normally fall under Rule 404(b) because it is not 'evidence of other crimes, wrongs, or acts.'" Id. at 177 (emphasis in original).

There are two types of intrinsic evidence. "First, evidence is intrinsic if it 'directly proves' the charged offense." Id. at 180 (quoting United States v. Green, 617 F.3d 233, 248-49 (3d Cir. 2010)). "Second, 'uncharged acts performed contemporaneously with the charged crime may be termed intrinsic if they facilitate the commission of the charged crime.' But all else must be analyzed under Rule 404(b)." Rose, supra, 206 N.J. at 180 (quoting Green, supra, 617 F.3d at 248-49).

Here, defendant's post-arrest statements in the patrol car directly proved the charged offense. A defendant is guilty of resisting arrest if she "purposely prevents or attempts to prevent a law enforcement officer from effecting an arrest." N.J.S.A. 2C:29-2(a). The statutory definition of "purposely" states, "A person acts purposely with respect to the nature of his conduct or a result thereof if it is his conscious object to engage in conduct of that nature or to cause such a result. . . ." N.J.S.A. 2C:2-2(b)(1). We find defendant's statements in the vehicle were directly probative as to whether she was acting with purpose to resist arrest. The trial judge correctly noted this evidence was necessary to corroborate the officers' testimony regarding defendant's mental state prior to her arrest.

Therefore, we conclude the footage of defendant's statements was intrinsic. Accordingly, we need not determine whether it was

admissible as extrinsic evidence under N.J.R.E. 404(b). Because the evidence was intrinsic, the trial judge did not err by failing to apply the four-prong test established in State v. Cofield, 127 N.J. 328, 338 (1992). See State v. Jones, 425 N.J. Super. 258, 274 (App. Div. 2012) (noting our review is plenary where the trial court fails to conduct a required Cofield hearing (citing Rose, supra, 206 N.J. at 157-58)).

Moreover, this evidence was relevant under N.J.R.E. 401, and its prejudicial effect did not substantially outweigh its probative value under N.J.R.E. 403. We further reject defendant's contention that the outside footage of her arrest and the officers' testimony constituted less prejudicial evidence proving the same point. See State v. Covell, 157 N.J. 554, 569 (1999). Therefore, we will not disturb defendant's conviction on this basis.

## II.

Defendant next urges us to vacate her conviction because the criminal statute that defines "weapon" is facially deficient; she further argues the canister of dog repellant failed to satisfy the statutory definition of a "weapon." We disagree.

We first address defendant's statutory interpretation argument. "When construing a statute, our goal is to discern and effectuate the Legislature's intent. The starting point for that inquiry is the language of the statute itself." State v. Brannon,

178 N.J. 500, 505-06 (2004). "The Court's objective is to determine the meaning of a statute to the extent possible by looking to the Legislature's plain language." State v. Regis, 208 N.J. 439, 447 (2011).

Defendant was charged with fourth-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(d).[1] Our Criminal Code defines "weapon" in a different statute as

> anything readily capable of lethal use or of inflicting serious bodily injury. The term includes, but is not limited to, all (1) firearms, even though not loaded or lacking a clip or other component to render them immediately operable; (2) components which can be readily assembled into a weapon; (3) gravity knives, switchblade knives, daggers, dirks, stilettos, or other dangerous knives, billies, blackjacks, bludgeons, metal knuckles, sandclubs, slingshots, cesti or similar leather bands studded with metal filings or razor blades imbedded in wood; and (4) stun guns; and any weapon or other device which projects, releases, or emits tear gas or any other substance intended to produce temporary physical discomfort or permanent injury through being vaporized or otherwise dispensed in the air.
>
> [N.J.S.A. 2C:39-1(r).]

Defendant asserts this definition contains "an irreconcilable conflict in the statutory language." Specifically, defendant argues the language, "anything readily capable of lethal

---

[1] We recognize the indictment charged defendant with possession of "cap-stun," which is a name-brand pepper spray, rather than the lower-strength dog repellant.

10                                                          A-2037-15T1

use or of inflicting serious bodily injury," conflicts with the subsequent language, "any other substance intended to produce temporary physical discomfort." The Criminal Code defines serious bodily injury as "bodily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." N.J.S.A. 2C:11-1(b). Defendant contends the initial requirement that an object be capable of serious bodily injury conflicts with the lesser requirement of temporary discomfort.

However, we do not find these provisions contradictory. The statute clearly intends "anything readily capable of lethal use or of inflicting serious bodily injury" as blanket statement covering all objects with such capabilities. N.J.S.A. 2C:39-1(r). The statute then provides a non-exclusive list of items it also considers weapons, including devices intended to produce temporary discomfort. See State ex rel. G.C., 359 N.J. Super. 399, 405-06 (App. Div. 2003) (noting N.J.S.A. 2C:39-1(r) includes items capable of lethal use or serious injury and "also lists particular objects that are considered weapons"), rev'd on other grounds, 179 N.J. 475 (2004). Defendant's argument therefore lacks merit.

Defendant also cites N.J.S.A. 2C:39-6(h) and N.J.S.A. 2C:39-6(i), which under certain circumstances exempt the possessor of a substance that produces "temporary physical discomfort" from being

charged under N.J.S.A. 2C:39-5. Defendant argues these statutes show the legislature did not intend to include substances such as the OC spray within the definition of "weapon."

However, we find these statutes reinforce the opposite position. N.J.S.A. 2C:39-6(h) exempts public utility and postal service employees, while performing their duties, from possessing a device that temporarily immobilizes certain animals. It further warns the substance "shall be used solely to repel only those canine or other animal attacks" where the animals are not restrained. Ibid. The other cited provision, N.J.S.A. 2C:39-6(i), exempts from a weapons charge

> any person who is 18 years of age or older and who has not been convicted of a crime, from possession for the purpose of personal self-defense of one pocket-sized device which contains and releases not more than three-quarters of an ounce of chemical substance not ordinarily capable of lethal use or of inflicting serious bodily injury, but rather, is intended to produce temporary physical discomfort . . . .

As such, rather than showing the Legislature intended to exempt such sprays from the definition of "weapon," these statutes clearly show the Legislature considered such sprays as weapons, except when used in narrow circumstances not applicable to the instant matter. Indeed, defendant is not a public employee, nor was she using her spray on an animal. See N.J.S.A. 2C:39-6(i). The record also shows she was not using the spray in self-defense,

and there is no information in the record regarding the weight of the canister.  Moreover, defendant had a prior conviction in Delaware that precluded her from exemption under N.J.S.A. 2C:39-6(i).

Finally, defendant argues the State failed to prove she possessed a weapon as defined by N.J.S.A. 2C:39-1(r).  Defendant previously raised this argument before the trial judge when she moved for a judgment of acquittal under Rule 3:18-1.  "We review the record de novo in assessing whether the State presented sufficient evidence to defeat an acquittal motion."  State v. Dekowski, 218 N.J. 596, 608 (2014).  "We must determine whether, based on the entirety of the evidence and after giving the State the benefit of all its favorable testimony and all the favorable inferences drawn from that testimony, a reasonable jury could find guilt beyond a reasonable doubt."  Ibid. (quoting State v. Williams, 218 N.J. 576, 594 (2014)).

Defendant contends the State did not meet its burden because the canister at issue did not have the capacity to cause serious bodily injury.  See N.J.S.A. 2C:39-1(r).  Indeed, the officers' testimony at trial showed the effects of the chemical were only temporary.  However, as noted, our Legislature included within the definition of "weapon," any "device which projects, releases, or emits . . . any other substance intended to produce temporary

physical discomfort . . . through being vaporized or otherwise dispensed in the air." <u>Ibid.</u> Although the dog repellant at issue was of lesser strength than police-issue pepper spray, the warning labels of the dog repellant identified it as "irritating spray" that was "[s]trongly irritating to eyes, nose and skin." Therefore, when used by defendant, it clearly met the statutory definition of a "weapon." We discern no basis for reversal on this issue.

### III.

Lastly, defendant urges us to remand for resentencing, claiming she received an inequitable and excessive sentence. We disagree.

Prior to trial, the State extended a plea offer to defendant of one year of probation in exchange for a guilty plea to obstructing administration of law as a disorderly person. Defendant, a resident of Delaware, told the judge she would accept the plea offer if she could transfer her probation to that state. Defense counsel stated she believed it was not possible to transfer probation on a disorderly persons' offense, so the judge gave counsel until the following week to resolve the issue; however, there is no record of any further discussion, and the case proceeded to trial.

At sentencing, the judge found aggravating factors N.J.S.A. 2C:44-1(a)(6) (defendant's prior criminal record and seriousness of the offense) and (9) (need for deterrence). He found mitigating factors N.J.S.A. 2C:44-1(b)(8) (defendant's conduct was the result of circumstances unlikely to reoccur), (9) (defendant's character indicates she is unlikely to commit another offense), and (10) (defendant is likely to respond affirmatively to probationary treatment). The judge rejected mitigating factors N.J.S.A. 2C:44-1(b)(1) (defendant's conduct neither caused nor threatened serious harm) and (2) (defendant did not contemplate her conduct would cause or threaten serious harm). In rejecting these factors, the judge noted defendant's conduct "did potentially result in serious harm. There's Cap-Stun spray. The officers had to decontaminate from that spray and there was the risk of other harm . . . based upon the way that she was handling herself in the presence of those officers." He also rejected mitigating factor N.J.S.A. 2C:44-1(b)(11) (imprisonment would entail excessive hardship to defendant or her dependents).

Defendant now argues her three-year probationary term is inequitable because she was willing to plead guilty in exchange for a one-year term. She also argues the judge erred by rejecting mitigating factors N.J.S.A. 2C:44-1(b)(1) and (2) because she

possessed dog repellant rather than "Cap-Stun," and because her conduct during her arrest did not threaten serious harm.

We review the judge's sentencing decisions for an abuse of discretion. State v. Blackmon, 202 N.J. 283, 297 (2010). If the sentencing judge has identified and balanced the aggravating and mitigating factors, and sufficient credible evidence in the record supports his or her finding, we will affirm. State v. Cassady, 198 N.J. 165, 180-81 (2009). We will modify a sentence if it "shocks the judicial conscience." State v. Roth, 95 N.J. 334, 364 (1984) (citing State v. Whitaker, 79 N.J. 503, 512 (1979)). However, we must remand if the sentencing judge fails to find mitigating factors that "clearly were supported by the record." State v. Bieniek, 200 N.J. 601, 608 (2010).

Pursuant to these standards, defendant's arguments lack merit. First, defendant cites no authority mandating a lesser sentence based upon an initial willingness to accept a plea offer. In fact, the record shows defendant wanted to accept this plea offer if she could have her probation transferred to Delaware. We note the judge rejected the State's request for 364 days of incarceration. We are satisfied defendant's three-year probationary term does not constitute an abuse of discretion, nor does it shock our judicial conscience. Roth, supra, 95 N.J. at 364.

16

Moreover, we find the judge appropriately rejected mitigating factors (1) and (2). The record shows defendant's actions in resisting arrest threatened the safety of the officers. The judge did not abuse his discretion by rejecting these factors.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION